(No. 5756. December 31, 1931.)

STATE, Respondent, v. WILLIAM O. COCHRANE, Appellant.

[6 Pac. (2d) 489.]

John W. Cramer, for Appellant.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

VARIAN, J.—Appellant appeals from a judgment of conviction of grand larceny under C. S., sec. 8191, reading:

"Every attorney at law, agent, collector or other person who collects or receives any money or property on any debt, claim or demand due to another person, and, upon demand made by said person to whom such debt, claim or demand is due, for the space of 20 days refuses or neglects to pay over said money, or deliver up said property, so received, to such person making said demand, is guilty of grand or petit larceny according to the amount of the money or value of the property so refused to be delivered over."

In effect the information charges that defendant was conducting a collection agency at Lewiston, Idaho; that The Clinic, a corporation, on or about January 1, 1925, and continuing until on or about November 1, 1929, delivered and placed with defendant accounts receivable, being accounts payable to said corporation by various people, for collection purposes only, and which were accepted by defendant for collection purpose only; that defendant was to receive fifty per cent of any amounts collected by him as his compensation; that among the accounts placed with defendant for collection was one against William L. Pemberton for $240, which was paid by him to defendant in full on or about August 10th, 1929; that on September 1, 1929, defendant paid to The Clinic $10 on said amount so collected, leaving a balance due on said collection of $110; that on or about November 15, 1929, Arthur D. Skinner, the duly authorized agent of the The Clinic, made demand upon defendant for the payment of fifty per cent of said $240, collected as aforesaid, less the $10 paid thereon; that defendant "unlawfully, feloniously and knowingly neglected and refused to pay over said money due the said The Clinic; as aforesaid, or any part thereof"; and has continued and still refuses and neglects to pay over the same or any part thereof to The Clinic; that demand for the payment of said $110 was made, under the provisions of C. S., sec. 8191, and that more than twenty days have elapsed since the said demand was made upon said defendant.

The evidence shows that about 1155 accounts, including the William L. Pemberton account declared on in the information, were turned over to defendant at Lewiston, Idaho, by The Clinic in 1925; that as to many of said accounts the statute of limitations had run; that for some of the latter defendant had obtained promissory notes; that the statute of limitations had not run on the Pemberton account; that the bulk of the accounts were turned over in one list in 1925, but a few others were turned over thereafter; that collection of the accounts was undertaken upon the basis that appellant should receive a commission of fifty per cent of all money

paid to him and twenty-five per cent of all moneys paid to The Clinic, on said accounts; that on November 15, 1929, Arthur D. Skinner, credit man and agent of The Clinic, under authority of its board of directors, demanded of defendant the return of all accounts and money belonging to said corporation, in his hands, and that he make return of any moneys theretofore not accounted for; that the Pemberton account was then among said accounts; that several demands were made later, at different times and places, for the return of said accounts and The Clinic's share of the proceeds of collection; that appellant admits having received the money due from Pemberton to The Clinic; and in a written statement to the latter, states that the amount due The Clinic is $115. Other facts appearing in the evidence will be adverted to in discussing questions raised by this appeal.

Appellant contends that the statute under consideration, C. S., sec. 8191, is unconstitutional and void, as being in direct violation of section 15, article 1, of the Idaho Constitution, which reads as follows: "There shall be no imprisonment for debt in this state except for fraud." He argues that the statute permits the imprisonment of one for debt without regard to the presence or absence of fraud in the transaction; that one is guilty under this statute, where he withholds moneys collected, irrespective of any reason for so withholding it; that an attorney may not withhold his fee nor a collector his commission from moneys collected by him; that the statute covers a situation where a fiduciary relation exists as well as one where the relation is that of debtor and creditor. Since there were periodical settlements between defendant and The Clinic, it is contended that the relationship, under the facts here, was that of debtor and creditor. We cannot agree with appellant's views. The contract proven was one of agency and the delivery by The Clinic of the accounts in question to appellant (including Pemberton's) for collection, constituted him its agent. (*Fisher v. Farmer's Co-operative Irr. Co., Ltd.*, 49 Ida. 343, 347, 288 Pac. 164.) The title to the accounts at all times remained in The Clinic

and the act punishes not the failure to pay a debt owed by defendant, but failure to return money, lawfully collected by him belonging to his principal, and unlawfully retained after demand therefor. Merely because there were periodical settlements between defendant and his principal does not alter the status of their relationship. The statute must be reasonably construed and does not mean that if appellant refused to pay back his commission, on demand, he would be subject to prosecution under it.

While the offense is denounced as larceny by the statute, it is, in most of its essentials, embezzlement as that crime is generally defined, except that the element of fraudulent intent with which the act is committed is not included. Appellant sought to justify his refusal to restore the collected money and uncollected debts, after demand, upon the claim that there had been no accounting between the parties as to commissions due appellant for moneys collected by his principal and that the demand included notes taken for stale accounts by appellant; items in the nature of set-off, which do not constitute a defense to charge of embezzlement (C. S., sec. 8458) and by analogy, as well as by fair interpretation of the statute (C. S., sec. 8191), not a defense to the particular charge of larceny set forth in the information.

*In re Holdforth,* 1 Cal. 438, cited by appellant, was before the supreme court of California on *habeas corpus.* There, petitioner was arrested in a civil action, under a section of the California Practice Act of 1850 similar to our C. S., sec. 6730, for having sold certain merchandise, as agent for plaintiff without paying over the money received therefor. The court held that the claim was a debt but in the absence of a demand or fraudulent conduct (specified in said Practice Act of 1850) on the part of defendant he could not be arrested in said civil action. Here we are dealing with a criminal action in which the demand required by statute was made.

In *Bailey v. Alabama,* 219 U. S. 219, 31 Sup. Ct. 145, 55 L. ed. 191, also cited by appellant, the United States supreme court had under consideration a so-called peonage statute of

Alabama. The circumstances governing the holding in that case are not at all analogous to those governing the instant case. It is therefore not in point.

It is thought that the constitutional inhibition does not generally apply to criminal actions; as was said by the Indiana supreme court:

"But it is plain that this constitutional inhibition was directed against imprisonment for debt, in civil actions, at the instance of the creditor with a view to coercing the payment of his debt, and had no reference to such actions as might be brought by the state through its officers in the interest of good morals and honest dealing." (*State v. Clark*, 171 Ind. 104, 16 Ann. Cas. 1229, 84 N. E. 984; *Northern Cedar Co. v. French*, 131 Wash. 394, 230 Pac. 837.)

"Statutes relieving from imprisonment for debt were not intended to take away the right to enforce criminal statutes and punish wrongful embezzlements or conversions of money." (*Freeman v. United States*, 217 U. S. 539, 19 Ann. Cas. 755, 30 Sup. Ct. 592, 54 L. ed. 874.)

We are constrained to hold that C. S., sec. 8191, *supra,* is not within the prohibition of section 15, article 1, of the Constitution. (See *Smith v. State*, 141 Ga. 482, Ann. Cas. 1915C, 999, 81 S. E. 220; *Ex parte King*, 102 Ala. 182, 15 So. 524; *State v. Benson*, 28 Minn. 424, 10 N. W. 471; *State v. Yardley*, 95 Tenn. 546, 32 S. W. 481, 34 L. R. A. 656.)

Appellant contends that the information fails to state a criminal offense in that it does not allege the act complained of was done with a criminal intent.

In construing R. S., sec. 6975 (C. S., sec. 8379) relating to embezzlement and falsification of accounts by public officers, it was held that it was not necessary to allege or prove a fraudulent or corrupt intent in prosecutions for violation of said section since the statute did not make intent an element of the crime therein denounced. (*State v. Browne*, 4 Ida. 723, 727, 44 Pac. 552.)

In *State v. Sterrett*, 35 Ida. 580, 207 Pac. 1071, a prosecution for violation of the law prohibiting transportation of intoxicating liquor it was held:

"Whether a criminal intent is a necessary element of a statutory offense is a matter of construction, to be determined from the language of the statute in view of its manifest purpose and design, and where such intent is not made an ingredient of the offense, the intention with which the act is done, or the lack of any criminal intent in the premises is immaterial."

The court held evidence of good faith and good intentions of defendant properly excluded since a criminal intent is not a necessary element of the crime charged under C. S., secs. 2606 and 8087.

It was within the province of the legislature to provide that the failure of an attorney, agent, collector or other person who collects money, to turn the same over to his principal within twenty days after demand therefor was larceny, even though the money was retained without fraudulent intent.

"The province of regulating the *quantum* and kind of proof that shall be required to establish guilt in any class or grade of crime is a legislative prerogative, pure and simple, and courts may not interfere with this right except in extreme cases." (*People v. Dillon,* 199 Cal. 1, 248 Pac. 230, 232.)

Since the statute (C. S., sec. 8191) does not provide that criminal or fraudulent intent is an element of the crime of grand larceny therein denounced, it was not necessary for the information to allege, or the state to prove, such an intent in order to sustain a conviction in the case at bar.

Appellant further contends that no sufficient demand was made upon him for moneys he collected from W. L. Pemberton. The proof shows that, commencing with November 15, 1929, several demands were made upon appellant, by an agent of The Clinic, for the return of all collections belonging to it in his hands, and all the money collected by him, less his commission. There was no specific demand for payment of the particular sum collected from W. L. Pemberton, the account upon which the present action is based. At the time the demand of November 15, 1929, was made, The

Clinic's agent had no knowledge of the payment of the Pemberton claim. The demand was for "all money" collected, and included the Pemberton claim which had theretofore been collected by appellant. (See *State v. Ring,* 29 Minn. 78, 11 N. W. 233, 237; *People v. Hatch,* 163 Cal. 368, 125 Pac. 907.)

Mr. Skinner, agent for The Clinic, testified that he made a demand for the return of the accounts and money collected, upon defendant at the latter's office in Spokane, on April 29, 1930, at which time appellant handed the witness a list of collections in appellant's own handwriting, which was marked State's Exhibit 7 and admitted in evidence over appellant's objection as to its competency, relevancy and materiality. The exhibit consists of eight pages of printed form headed, "Statement Cochrane Finance Company," with a penciled list of names and other memoranda thereon after each name, showing figures under columns headed "To you," "Commission," "You owe us," "To us," "Commission" and "We owe you." Obviously the columns with the first three headings mentioned refer to moneys paid by debtors to The Clinic (on which appellant was to receive twenty-five per cent commission), and the last three headings refer to moneys paid to appellant (for which he was to receive fifty per cent commission.) The various items claimed to be due appellant, and due to The Clinic are totaled at the foot of each page. Mr. Skinner testified without objection or contradiction, that the penciled figures at the top of the first page, "$3981.57" and, "4/29/30," represented the total amount shown by the exhibit (7) to be due The Clinic and the date of its delivery to the witness. These figures were placed there by the witness at the time after appellant and the witness had footed the statement and checked it over in order that they need not foot up the total every time they desired to know what the amount was. This exhibit on page 2 shows the name W. L. Pemberton followed by the figures "230.00" in the columns headed "to us," "115" in the column headed "commission," and "115.00" in the column headed "We owe you."

. It is now contended that if the statute (C. S., sec. 8191) does not require the state to prove a criminal intent, the exhibit tending to show other moneys collected and not paid over after demand, amounted to proof of other offenses not admissible in evidence and highly prejudicial to appellant.

The effect of the exhibit was to show a general shortage in appellant's dealings with The Clinic and that the amount of the Pemberton claim was included as a part of the general shortage. While proof of the general shortage is not conclusive of the truth of the charge, it is admissible as tending to show absence of accident or mistake, as to the specific charge (see *People v. Rowland,* 12 Cal. App. 6, 106 Pac. 428, 433), and to show knowledge of the facts. (*State v. O'Neil,* 24 Ida. 582, 596, 135 Pac. 60.)

In a case charging defendant with the crime of knowingly receiving stolen property for his own gain, this court laid down the exception to the rule as to proof of other offenses, saying:

"Evidence of other crimes is always admissible when such evidence tends directly to establish the particular crime; and evidence of other crimes is usually competent to prove the specific crime when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others." (*State v. Montgomery,* 48 Ida. 760, 285 Pac. 467.)

The evidence shows that appellant was simultaneously conducting a collection business, through employees and agents, in several different towns and did not confine his personal attention entirely to the business of his Lewiston office. While the rules cited, *supra,* seem to have been applied to cases where intent is a necessary ingredient of the crime charged, we see no good reason why they should not be applied in cases where, as in the instant case, criminal intent is not involved. This character of proof also tends to negative the idea of accident or mistake, and tends to show knowledge by defendant of the facts constituting the

offense for which he is being tried. The exhibit was therefore admissible to show that the facts of the Pemberton transaction did not involve accident or mistake, and that he had actual knowledge of the payment of the Pemberton claim and his failure theretofore to account for the moneys received thereon. Over appellant's objection, the state was permitted to show four other creditors of The Clinic had paid moneys to the appellant on account thereof, said names, amounts paid, etc., likewise appearing on said exhibit as among the accounts turned over to appellant for collection.

All of these accounts were included in those delivered to appellant for collection and constitute parts of the same general transaction. Therefore this evidence was admissible, for the reasons heretofore mentioned, and since they disclose a common scheme or plan embracing the commission of several crimes so related to each other and to the crime charged that proof of the former tended to establish the latter. (*State v. Montgomery, supra.*)

Oral testimony was admitted tending to show that appellant had brought a civil suit against The Clinic, in the federal court, for an accounting as to items held by him for collection and paid to The Clinic by its debtors. Later the court restricted cross-examination as to the details of this action in the federal court. The bringing, or pendency, of the accounting suit was not a defense and the court did not abuse its discretion in curtailing the cross-examination of witnesses in regard thereto. (*State v. McClurg,* 50 Ida. 762, 300 Pac. 898; *State v. Mox Mox,* 28 Ida. 176, 152 Pac. 802.)

The court instructed the jury in substance that if they found defendant received from The Clinic an account against William L. Pemberton which he collected, and if the jury further found "that a demand was made upon him for the payment of any amount collected," and that defendant refused and neglected, for a period of more than twenty days, to pay over said money to The Clinic, defendant was guilty of grand larceny, provided the amount due by reason

of said collection, less defendant's commission, exceeded the sum of $60.

 Appellant complains that this instruction does not confine the demand to the time laid in the information, i. e., on or about November 15, 1929, and to "any money collected upon the Pemberton account." The evidence shows that demands were made upon defendant by The Clinic's agent for all the money collected for it, less his commission, commencing with November 15, 1929, and covering a period of several months. The instruction was sufficiently definite in this regard. As to the other ground, "any amount collected" necessarily included the Pemberton account. While the instruction may not be a model to be followed in every case, under the facts disclosed by the record, we do not deem it subject to the criticism urged.

Judgment affirmed.

Lee, C. J., and Budge and McNaughton, JJ., concur; Givens, J., dissents.