935 P.2d 183

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Fairy Jane OWEN, Defendant–Appellant.**

**No. 20707.**

Court of Appeals of Idaho.

Jan. 8, 1997.

Rehearing Denied March 5, 1997.

Petition for Review Denied, April 29, 1997.

Nevin, Kofoed & Herzfeld, Boise, for appellant. Dennis A. Benjamin argued.

Alan G. Lance, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

WALTERS, Chief Judge.

Fairy Jane Owen was found guilty by a jury of twenty-nine counts of grand theft and of one count of attempted grand theft. The district court imposed unified sentences of fourteen years, with minimum periods of confinement of three years, for each grand theft conviction, and a unified sentence of seven years with a minimum period of confinement of two years for the attempted grand theft conviction. The court ordered that all sentences be served concurrently. Owen appeals from her convictions and the sentences imposed. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fairy Jane Owen was charged by four separate informations filed by the prosecuting attorney for Bannock County with a total of thirty counts of grand theft, I.C. §§ 18–2403(1) and 18–2407(1), and with two counts of attempted grand theft, I.C. §§ 18–2403, 18–2407(1) and 18–306. She was accused in the various counts of wrongfully obtaining a vast array of goods and services from businesses in the Pocatello area.[1]

Upon Owen's pleas of not guilty, the charges were consolidated for trial and a trial date was set for June 15, 1993. Attorney Thomas F. Hale, who had entered an appearance on behalf of Owen, failed to attend on the scheduled day of the trial. The district court rescheduled the trial for August 5, 1993, and contempt proceedings were initiated against Hale.[2] The court also requested the Bannock County Public Defender's Office to assign appointed counsel to assist Owen. Subsequently, over Owen's objection, Robert O. Eldredge, a conflicts attorney, was appointed by the court as standby counsel for Owen. The court denied Owen's request for a continuance of the August 5 trial date. During the trial, Owen personally conducted the majority of her defense. Eldredge performed some of the direct examinations of the defense witnesses and delivered the closing argument.

The jury found Owen guilty of twenty-nine counts of grand theft and guilty on one count of attempted grand theft. The district court imposed a unified sentence of fourteen years, with three years fixed, for each conviction of grand theft. The court also imposed a fixed term of two years with a subsequent indeterminate term of five years for the attempted grand theft conviction. The court ordered that all sentences be served concurrently. Owen timely appealed from her convictions· and the sentences imposed.

1. The evidence submitted by the state at trial indicated that Owen failed to pay for the goods or services after the goods were delivered or the services were rendered. Essentially, the thrust of the state's case was that although Owen intended to receive the goods or services she contracted for, she never intended to pay for the items either at the time she entered into each of

## II. ISSUES

Owen asserts that: (1) all of the informations, as amended, were insufficiently pled because they failed to aver specific facts which would have enabled her to adequately prepare a defense against each of the thirty counts of theft alleged pursuant to I.C. § 18–2403(1); (2) the charges of theft by deception, I.C. § 18–2403(2)(a), and theft by false promise, I.C. § 18–2403(2)(d), are unconstitutional because they violate Art. I, § 15 of the Idaho Constitution by permitting imprisonment for debt without a showing of fraud; (3) jury instructions nos. 15 and 16 unconstitutionally allowed the jury to return a verdict finding Owen guilty of theft on the ground of unpaid debts without requiring a determination that fraud had been committed with respect to those debts; (4) the district court erred by appointing counsel over Owen's objections; (5) the state's use of peremptory challenges to dismiss a Native American from the venire panel was unconstitutional; (6) the district court erred in permitting the state to amend the charge of attempted theft of a refrigerator to attempted theft of a range, after the state had rested its case; (7) the district court violated I.R.E. 804(b)(1) and Art. I, § 13 of the Idaho Constitution by allowing the state to present a witness's testimony by way of a transcript of Owen's preliminary hearing; (8) jury instruction nos. 11 and 16 violated Owen's right to due process under the state and federal constitutions because both instructions permitted conviction upon evidence proving guilt to a "moral certainty" rather than proof beyond a reasonable doubt; and (9) the district court violated Owen's federal and state protections against self-incrimination by requiring her to submit to a psychological evaluation in connection with the preparation of reports for consideration during Owen's sentencing hearing.

the transactions, at the time the items were provided to her or at any time thereafter.

2. The district court later held Hale in contempt of court for his actions in this case. The contempt order was affirmed on appeal. *See Hale v. Winmill*, 126 Idaho 871, 893 P.2d 818 (Ct.App. 1995).

## III. DISCUSSION

### A. Sufficiency of the Informations.

Owen submits that the informations were not "plain, concise and definite written statement[s] of the essential facts constituting the offense[s] charged" as required by Idaho Criminal Rule 7(b). She supports her position with the following arguments. First, Owen asserts that the state charged her in the informations under the general theft statute, I.C. § 18–2403(1), which defines the crime of theft without reference to the particular method used by the offender to take, obtain or withhold the alleged owner's property.[3] She argues that, nevertheless, the state should have alleged which of the eight alternative "methods" or "ways" of committing theft pursuant to I.C. § 18–2403(2)[4] it was charging, especially as the state later—during the trial—used the theories of theft by deception, I.C. § 18–2403(2)(a), and theft by false promise, I.C. § 18–2403(2)(d), to establish Owen's guilt. Second, Owen asserts that the state failed to provide any facts in the informations which would have enabled her to know which subsection or subsections of I.C. § 18–2403(2) she would have to defend against with respect to any particular charge. Owen contends that because she did not receive adequate notice of the specific theft charges, she was unable to prepare a complete defense and, consequently, was denied her state and federal constitutional rights to due process. Finally, Owen points to Idaho Rule of Civil Procedure 9(b) which requires that "the circumstances constituting fraud ... shall be stated with particularity," and argues that because her liberty was at stake she should be entitled to at least the same amount of notice to which a civil litigant is entitled in a fraud action.

The state responds that the informations complied with I.C.R. 7(b), as well as with the constitutional requirements for due process. The state argues that I.C. § 18–2409 relieves the charging party from specifying which "method" or "way" the accused committed the alleged theft under I.C. § 18–2403. The state also asserts that even if it was obligated to provide the way or manner in which the thefts were committed, the state is not required to provide in the charging documents the evidence which it intends to produce at trial. Such disclosure of evidence, the state maintains, is not required in order for an information to be legally sufficient. Finally, the state submits that Owen failed to demonstrate that the language used in the informations prejudiced the preparation of her defense and thus should not be permitted to now challenge the sufficiency of the informations. In response, Owen contends that because the issue of the sufficiency of the informations is a jurisdictional question, see *State v. Grady*, 89 Idaho 204, 404 P.2d 347 (1965),

3. Idaho Code § 18–2403(1) provides:

> **Theft.**—(1) A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

4. Idaho Code § 18–2403(2) provides in pertinent part as follows:

> (2) Theft includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subsection (1) of this section, committed in any of the following ways:
> (a) By deception obtains or exerts control over property of the owner;
> (b) By conduct heretofore defined or known as larceny; common law larceny by trick; embezzlement; extortion; obtaining property, money or labor under false pretenses; or receiving stolen goods;
> (c) By acquiring lost property....
> (d) By false promise:

> 1. A person obtains property by false promise when pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.
> 2. In any prosecution for theft based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed. Such a finding may be based only upon evidence establishing that the facts and circumstances of the case are consistent with guilty intent or belief and inconsistent with innocent intent or belief, and excluding to a moral certainty every reasonable hypothesis except that of the defendant's intention or belief that the promise would not be performed;
> (e) By extortion....

she was not required to show that she had been prejudiced.[5]

■ Whether an information conforms to the requirements of law is a question that is subject to free review. *State v. Robran,* 119 Idaho 285, 287, 805 P.2d 491, 493 (Ct. App.1991). A legally sufficient information is a plain, concise, and definite written statement of the essential facts constituting the offense charged. I.C. §§ 19–1303, 19–1409 through 19–1418; I.C.R. 7(b); *State v. Darbin,* 109 Idaho 516, 519, 708 P.2d 921, 924 (Ct.App.1985). The sufficiency of an information ultimately depends on whether it fulfills the basic functions of the pleading instrument. *State v. Windsor,* 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985); *Robran,* 119 Idaho at 287, 805 P.2d at 493. The sufficiency of an information is tested by a functional analysis encompassing two inquiries: (1) whether the pleading contains the elements of the offense charged and fairly informs the defendant of the charge which must be defended against; and (2) whether the information enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), cited in *Windsor, supra,* and *Robran, supra.* An information must be specific enough to advise a defendant as to the particular section of the statute he or she is being charged with having violated and, in addition, must set forth a concise statement of the facts constituting the alleged offense sufficiently stated that the particular offense may be identified with certainty as to time, place and persons involved. *State v. Grady,* at 211, 404 P.2d at 351.

We will address the issue of the sufficiency of the informations filed against Owen by reviewing each information in turn. We then discuss the informations collectively.

The record shows that, on January 8, 1993, Owen was charged by information with one count of grand theft by deception (obtaining property under false pretenses) pursuant to I.C. §§ 18–2403(2)(a) and 18–2407(1)[6]. Over Owen's objection, the information was subsequently amended in May, 1993, to allege grand theft under the general theft statute. As amended, the information in pertinent part charged that Owen, while in Pocatello, Idaho, did on a specified date:

> unlawfully and feloniously, with the intent to permanently deprive another of their property, or to appropriate the same to herself or to a third person, wrongfully obtain or exert control over the property of another, to-wit: [description of the property and name of the owner], having exceeded a value in excess of $150.00 lawful money of the United States.

On January 8, 1993, Owen was also charged by another information with an additional five counts of grand theft by deception (false pretenses) pursuant to I.C. §§ 18–2403(2)(a) and 18–2407(1). This information was likewise later amended over Owen's objection to allege only violations of the general theft statute. The amended information stated that Owen, in Pocatello, Idaho, on a date specified in each count, did:

> with the intent to permanently deprive another of their property, or to appropriate the same to herself or to a third person, wrongfully obtain or exert control over the property of another, to-wit: [description of the property and name of the owner], having exceeded a value in excess of $150.00 lawful money....

On March 11, 1993, Owen was charged by a third information with an additional twenty-three counts of grand theft, I.C. §§ 18–2403(1) and 18–2407(1), and two counts of attempted grand theft, I.C. §§ 18–2403, 18–2407(1) and 18–306[7]. The initial criminal

---

**5.** The record shows that Owen unsuccessfully raised the question of the sufficiency of the informations several times in the district court. However, in *Grady,* the Supreme Court entertained the question concerning the sufficiency of the information filed against Grady, which question was raised for the first time by Grady on the appeal, after concluding that the sufficiency of an information is a jurisdictional issue.

**6.** Idaho Code § 18–2407(1) provides that theft is divided into two degrees, grand theft and petit theft, and discusses the elements required for each degree of theft.

**7.** Idaho Code § 18–306 sets forth the range of punishments for various attempts to commit crimes. The statute was amended in 1994, subsequent to the charges filed against Owen.

complaints on these offenses charged Owen with theft by deception, similar to the counts in the informations filed on January 8, 1993. However, during the preliminary hearing on the charges the complaints were amended to delete the deception and false pretenses allegations. Consequently, when Owen was bound over to district court following the preliminary hearing, the information filed by the prosecutor did not refer to any of the specific methods or ways of committing theft pursuant to I.C. § 18–2403(2). The language used in count one of the third information is the same as the language used to allege the other grand theft charges in this information. In relevant part, count one averred that Owen, in Pocatello, Idaho, did, on a specified date:

> unlawfully and feloniously, take, obtain or withhold with the intent to permanently deprive another of their property, or to appropriate the same to herself, or to a third person, to-wit: [description of the property and name of the owner], having a value in excess of $150.00 lawful money....

The two counts charging attempted grand theft read identical to the grand theft counts, except that the words "attempt to" were inserted before the word "take" in the first line of the allegation quoted above.

Finally, on May 10, 1993, Owen was charged by a fourth information with one count of grand theft pursuant to I.C. §§ 18–2403(1) and 18–2407(1). The language used in this information is identical to that used by the state in the third information, which is described above.

As a result, all of the informations as filed or amended charged Owen with grand theft by reference to I.C. §§ 18–2403(1) and 18–2407(1) without specifying a particular method or way that each theft was committed. Although, as detailed in I.C. § 18–2403(2), grand theft may be committed in several ways, another statute, I.C. § 18–2409(1), provides that:

> Where it is an element of the crime charged that property was taken from the person or obtained by extortion, an indictment, complaint or information for theft must so specify. In all other cases, an indictment, information or complaint for theft is sufficient if it alleges that the defendant stole property of the nature or value required for the commission of the crime charged without designating the *particular way or manner* in which such property was stolen or the *particular theory of theft* involved.

(Emphasis added.) *See also State v. Henderson,* 113 Idaho 411, 412, 744 P.2d 795, 796 (Ct.App.1987) (grand theft is a specific intent crime and, although the crime may be committed in several ways, it generally does not need to be pled in a particular way).

It is clear that each count in the informations filed against Owen described the nature and the value of the property allegedly stolen, identified with certainty the time, place and persons or property owners involved, and thus satisfied the statutory requirements prescribed in I.C. § 18–2409. Aside from the statutory compliance, however, Owen poses a due process argument against the sufficiency of the counts in the informations. Owens submits that, from the allegations in the informations, she could not discern whether she was accused of committing theft of the specified property by physically stealing items from the victim's residences or places of businesses, by embezzling goods entrusted to her by an employer or business associate, by possessing property stolen by someone else, or by any other of the multitude of means of committing theft that are contemplated within I.C. § 18–2403. Thus, the pleadings did not apprise her of the alleged facts which she would need to refute at trial.

Nevertheless, the record discloses that Owen suffered no prejudice as a result of the state's failure to set forth the particular acts constituting theft. Our Supreme Court has held that a defendant cannot legitimately claim surprise "to his substantial prejudice" by the absence in the information of specific details relating to an offense where those details are already known to the defendant or provided to the defendant by a means other than through the language in the information. *See State v. Gumm,* 99 Idaho 549, 552, 585 P.2d 959, 962 (1978). Here, Owen had the benefit of preliminary hearings in

the magistrate division before the informations were filed upon which she went to trial in the district court. Disclosure during the preliminary hearings of the evidence demonstrating the state's position with regard to the circumstances, method, manner, or way each charged theft was committed was a reasonable means for Owen to be apprised of the particularities of the state's theories, before the informations were filed.

We conclude that Owen was not prejudiced by the state's reliance upon I.C. § 18–2409(1). Although that statute relieved the state from alleging in the informations the theories of theft involved, the details of the crimes were made available to Owens by way of the preliminary hearings held on the charges.[8]

## B. Article 1, § 15 of the Idaho Constitution.

Article 1, § 15 of the Idaho Constitution provides that "[t]here shall be no imprisonment for debt in this state except in cases of fraud." This provision is intended to prohibit imprisonment over disputes which are contractual in nature. *Phillips v. Dist. Ct. of the Fifth Judicial Dist.*, 95 Idaho 404, 406, 509 P.2d 1325, 1327 (1973).

Owen claims that the theft alternatives of theft by deception, I.C. § 18–2403(2)(a), and theft by false promise, I.C. § 18–2403(2)(d), violate Art. 1, § 15 of our constitution because both statutory provisions permit imprisonment for a debt without proof of fraud. She argues that in order to imprison an individual for either of these theft alternatives, the elements required in a civil action to establish liability on a claim of fraud must be proven.[9] Owen asserts that because neither theft by deception nor theft by false promise requires proof of all of the elements of fraud, each violates the constitutional prohibition against imprisonment for debt in cases, like hers, where the underlying charge is based upon a failure to pay for goods or services—a contractual debt.

Owen alternatively argues that her convictions should be set aside because jury instruction nos. 15[10] and 16[11] unconstitutionally permitted the jury to return a guilty verdict of theft due to unpaid debts without requiring a determination that fraud had been committed.

Where a statute or constitutional provision is clear, we must follow the law as written. *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). However, if the statute or constitutional provision is unclear, the general rules of statutory construc-

8. The argument posed by Owen may well be revived in a case where a defendant waives the preliminary hearing, or where the prosecutor proceeds by way of a grand jury indictment without affording the defendant a preliminary hearing. To avoid the due process problem encountered here, a prosecutor simply could ignore I.C. § 18–2409(1) and insert appropriate language in the information or indictment, similar to the information reviewed in *State v. Darbin*, 109 Idaho 516, 518–19, 708 P.2d 921, 923–24 (Ct.App. 1985), stating the way the defendant committed the alleged theft.

9. The elements required in an civil action alleging liability on a theory of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the representation will be acted upon in a reasonably contemplated manner; (6) the listener's ignorance of the representation's falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely upon the truth of the representation; and (9) the listener's consequential and proximate injury.

10. Jury instruction no. 15 provides that:

Theft by Deception is committed when a defendant obtains or exerts control over property of the owner by:
(a) creating or confirming another's impression which is false and which the defendant did not believe to be true, or
(b) failing to correct a false impression which the defendant previously had created or confirmed, or
(c) prevented another person from acquiring information relevant to the disposition of the property.

11. Jury instruction no. 16 states in pertinent part that:

Theft by False Promise is committed when a defendant, pursuant to a scheme to defraud, obtains property of another by representing that she or some other person would in the future engage in particular conduct, and when making the representation she did not intend to engage in such conduct or did not believe that the other person intended to engage in such conduct. . . .

tion are applied. *Id.* The fundamental object in construing constitutional provisions is to ascertain the intent of the drafters by reading the words as written, employing their natural and ordinary meaning, and construing them to fulfill the intent of the drafters. *Id.* at 139, 804 P.2d at 312.

█ According to our Supreme Court in *State v. Cochrane,* 51 Idaho 521, 6 P.2d 489 (1931), Art. 1, § 15 of the Idaho Constitution was "directed against imprisonment for debt, in civil actions, at the instance of the creditor with a view to coercing the payment of his debt, and had no reference to such actions as might be brought by the state through its officers in the interest of good morals and honest dealing." 51 Idaho at 527, 6 P.2d at 491. The Court further held that statutes protecting an individual from imprisonment for debt were "not intended to take away the right to enforce criminal statutes and punish wrongful embezzlements or conversions of money." *Id.*

█ The elements of theft by deception and theft by false promise as defined in I.C. § 18–2403(2)(a) and (d) include a component of dishonesty or falsehood, for the former requires that the perpetrator engage in some deception in order to acquire property and the latter requires a scheme to defraud or an express or implied misrepresentation. Therefore, these subsections advance the state's interest in preserving "good morals and honest dealing" and, under *Cochrane,* are permissible criminal statutes that do not run afoul of Art. 1, § 15.

## C. Appointment of Counsel.

Owen claims that the district court erred by: (1) appointing Eldredge as standby counsel over Owen's objection when it was clear that she had an established attorney-client relationship with two other attorneys, Bob Pangburn and Bernard Zaleha; (2) requiring Owen to choose between either representing herself at trial or being represented by Eldredge; and (3) not requiring Hale to act as Owen's legal counsel when he entered the courtroom as a spectator one day during her trial.

Owen asserts that the district court made no effort to contact her counsel of record, Pangburn and Zaleha, to learn why they did not appear or attempt to ensure their appearance at the rescheduled trial date. She also contends that the court exceeded its authority by replacing counsel over her objection. Finally, Owen argues that she did not voluntarily give up her Sixth Amendment right to the assistance of counsel when she chose to represent herself at trial. She argues that what she gave up was the opportunity for representation by a particular attorney, Eldredge, whom she neither knew nor trusted.

The procedural history of Owen's representation is quite lengthy. It is best summarized by the district court in its memorandum decision and order, filed on October 13, 1993, as follows:

During the earliest stages of these cases the defendant chose to represent herself at times, and at other times chose to utilize the services of attorneys retained for her by the public defender's office, because of a potential conflict of interest which they had in representing the holder of a lien on the defendant's home. Subsequently, the public defender's office terminated their representation of the private client which created the conflict of interest, and indicated they would represent the defendant. Ms. Owen objected to the public defender's office representing her because of the prior conflict of interest, and demanded that the Court appoint an attorney of her choosing to represent her. The Court refused to grant her request.

However, to avoid further conflict with Ms. Owen, the public defender's office determined that they would attempt to retain other counsel to represent the defendant. Ms. Owen was involved in and approved the selection of an alternative public defender, Mr. Thomas F. Hale. Ms. Owen had prior dealings with Mr. Hale and was apparently content with his involvement in the case. However, at the time of his initial appearance in the case in early May [of 1993], Mr. Hale advised the Court that he had little trial experience and would not, in any event, be available for the

pending trial date in June because of an illness in his family. He advised the Court that for these reasons, he would handle all pre-trial matters, but had retained other counsel, Mr. Bob Pangburn and Mr. Bernie Zaleha, to represent Ms. Owen at trial.

A few days prior to the scheduled trial date, Mr. Hale apparently traveled to Kentucky. At the time of the trial on June 15, 1993, the State was ready to proceed and Ms. Owen was in attendance. However, neither Mr. Pangburn nor Mr. Zaleha appeared. Because Mr. Hale, Mr. Pangburn, and Mr. Zaleha were not present to represent Ms. Owen, the Court determined that it could not proceed with the trial, and the summoned jurors were dismissed.

To avoid the problem created when Hale, Pangburn and Zaleha failed to appear at trial, the Court directed the public defender's office to appoint other counsel to represent Ms. Owen. On June 16, 1993, the Court conducted a hearing and re-set the trial for August 5, 1993. At that time, the Court was advised that the public defender's office had appointed Mr. Bob Eldredge, a practicing attorney with considerable trial experience in criminal matters, to represent the defendant at trial. Ms. Owen at that time declined to make a commitment as to whether she would accept Mr. Eldredge's services. Ms. Owen indicated that it was still her desire to have Hale, Pangburn or Zaleha represent her at trial. The Court then ordered that Mr. Eldredge represent Ms. Owen or appear as standby counsel if she declined to accept his representation. The Court advised Ms. Owen that she had three options. First, she could utilize Mr. Eldredge's services and permit him to represent her. Second, she could arrange for other counsel, such as Mr. Hale, Mr. Zaleha, or Mr. Pangburn, to appear at the time of trial. Third, she could represent herself at trial, as is her right; if Ms. Owen chose this latter option, Mr. Eldredge would sit through the trial as her standby counsel, providing such assistance as she might request during the course of the trial.

However, the Court also indicated that because the case had been continued on two occasions, and because the Court had

no available trial dates through the rest of 1993, the August 5 trial date would not be postponed. The Court further advised Ms. Owen that if she did not utilize Mr. Eldredge's services and did not appear with other counsel, the Court would conclude that she had chosen to represent herself.

Ms. Owen argued throughout the trial that Mr. Zaleha and Mr. Pangburn are her trial attorneys and that the Court violated her right to counsel by proceeding in their absence. However, Mr. Pangburn and Mr. Zaleha did not appear at any of the pre-trial hearings before the Court, they failed to appear at the time of the original trial setting, and they did not appear when the trial commenced on August 5. Moreover, they have not filed a written appearance in this case, have filed no pleadings in the Court file, and have not communicated in any manner with the Court concerning this case. The Court therefore concluded that they were not representing Ms. Owen in this case.

Ms. Owen has argued that the Court should have granted yet another continuance to accommodate Mr. Hale['s] and Mr. Pangburn's schedule. However, copies of the Court's Order setting the case for trial on August 5, were mailed to both Hale and Pangburn in mid-June. Neither of these gentlemen contacted this Court to indicate their desire to represent Ms. Owen or to suggest an alternative date when they would be available for trial. Moreover, Ms. Owen has never indicated why Mr. Zaleha, who was presumably available on the August 5 trial date, never appeared to represent her at trial. (Footnotes omitted.)

 The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and by Art. I, § 13 of the Idaho Constitution. *State v. Carman,* 114 Idaho 791, 793, 760 P.2d 1207, 1209 (Ct.App. 1988). This right is not absolute. *State v. Clayton,* 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980); *Carman,* 114 Idaho at 793, 760 P.2d at 1209. It does not necessarily include the right to counsel of one's own choosing. I.C.R. 44; *Clayton, supra; State v. Browning,* 121 Idaho 239, 244, 824 P.2d 170, 175

(Ct.App.1992). It does, however, entitle a criminal defendant to reasonably competent counsel. *State v. McCabe,* 101 Idaho 727, 728, 620 P.2d 300, 301 (1980); *Carman,* 114 Idaho at 793, 760 P.2d at 1209. At any stage in the proceeding, the court may, in its discretion, assign substitute counsel for good cause. I.C. § 19–856; *Browning, supra.* Moreover, the accused's right to counsel does not wholly displace the judicial objective of effective court management. *Carman, supra.* Therefore, a request for new counsel should be examined by a trial court with the rights and interests of the defendant in mind, tempered by exigencies of judicial economy. *Id.*

■ The record clearly details the dilemma before the district court on this matter— Owen's counsel of record provided inadequate assistance and, as a result, her trial was substantially delayed. The district court was quite lenient in its attempts to accommodate Owen's requests that Hale, Pangburn or Zaleha be allowed to represent her. However, after Hale demonstrated he was not providing Owen with adequate assistance, and Pangburn and Zaleha did not file a notice of appearance or attend the proceeding on the initial trial date, the district court had good cause to direct the public defender's office to appoint a competent attorney to represent Owen over her objection.

The district court gave Owen three options regarding her legal representation at trial, from which she could choose. The court informed Owen that she could arrange to be represented by Hale, Pangburn or Zaleha, she could allow Eldredge to represent her or she could elect to represent herself. Owen was given ample opportunity by the court to be represented by counsel consistent with the Sixth Amendment. It was Owen's responsibility .to secure the legal services of either Hale, Pangburn or Zaleha if she wished to be represented by the one of her choice. Her failure to do so is not an error by the district court. Furthermore, there is no indication in the record that Eldredge was unable to serve competently as Owen's counsel. The record persuasively shows that the district court met its obligations under the Sixth Amendment by making competent legal representation available to Owen.

Finally, the record indicates that the district court was concerned about another continuance. Even though Owen had formally waived her right to a speedy trial, the court wanted to ensure a trial date for Owen within the near future because the court's calendar was full for the remainder of the year. The district court appropriately weighed Owen's rights and interests with its need for effective court management.

We conclude that the district court had good cause to appoint Eldredge over Owen's objection. Consequently, the court's decision not to request Hale to continue to represent Owen, when Hale appeared as a spectator during the trial and after the court had appointed Eldredge to represent Owen, was proper. We also hold that the district court justly weighed Owen's rights and interests with its needs for effective court management in deciding not to delay the trial further.

### D. Peremptory Challenges.

Two Native Americans, Rachel Hall and Jeanetta Buckskin, were among the twenty-seven persons called as potential jurors in the case. During voir dire, the state exercised peremptory challenges against both Hall and Buckskin. Later, the state withdrew its challenge against Hall, and she was allowed to sit as a juror. Owen now claims that the state's peremptory challenge of Buckskin was in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because the challenge was racially motivated. She further asserts that even if it is found that the state's explanation of its exercise of the challenge could be construed as race neutral, the district court failed to determine whether the race-neutral reason offered by the state was the true reason or merely a pretext for a racially motivated reason, the last of three steps required in the *Batson* analysis. *Id.* at 96– 98, 106 S.Ct. at 1723–24.

■ In *Batson,* the United States Supreme Court held that the discriminatory use of peremptory challenges, which functionally

serves to exclude an individual from jury service on account of his or her race, is a violation of equal protection under the U.S. Constitution. *Batson*, 476 U.S. at 85, 106 S.Ct. at 1716–17. Inasmuch as a "person's race simply 'is unrelated to his fitness as a juror,'" a venireperson has a right not to be excluded from jury participation on account of his or her race. *Batson*, 476 U.S. at 87, 106 S.Ct. at 1718, *quoting from Thiel v. Southern Pacific Co.*, 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946). The prohibition against such discrimination applies with equal force whether the party exercising the peremptory challenge is a governmental or private litigant. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

*Batson* dictates that a trial court, when faced with the possibility that a party has exercised a peremptory challenge in a discriminatory fashion, must apply the following three-part test. First, the party objecting to the peremptory challenge must make a prima facie showing that the challenge was exercised on the basis of race. *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721–22; *see also United States v. Seals*, 987 F.2d 1102, 1108 (5th Cir.1993), *cert. denied*, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). Second, if the prima facie showing is made, the burden shifts to the party attempting to exercise the peremptory challenge to articulate a race-neutral explanation for its decision. *Batson, supra.* Third, if a race-neutral explanation is tendered, the trial court must then determine whether the party attacking the peremptory challenge has met its burden of proving a purposeful discrimination based on race. *Id.*; *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995), *petition for reh'g denied*, —— U.S. ——, 115 S.Ct. 2635, 132 L.Ed.2d 874 (1995).

To establish a prima facie case of discrimination, the challenged venireperson must be a member of a cognizable racial group. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. It is not necessary for the party contesting the peremptory challenge to be of the same racial group as the challenged member of the venire panel, but in such cases a court will scrutinize more closely the use of the peremptory challenge because the rights of both the party and the prospective juror are implicated. *Powers v. Ohio*, 499 U.S. 400, 415, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991). Next, the party against whom the challenge is used is entitled to rely on the fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson, supra*, 476 U.S. at 96, 106 S.Ct. at 1723, *quoting Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953). Finally, the facts and relevant circumstances must raise an inference that the peremptory challenge was being used to exclude a member of the venire from the jury based upon race. *Id.*; *see also United States v. Castro–Romero*, 964 F.2d 942, 943 (9th Cir.1992); *State v. Araiza*, 124 Idaho 82, 87, 856 P.2d 872, 875 (1993).

It is well established that cognizable or identifiable racial groups are those which have historically been subjected to discriminatory treatment and have from time to time required aid from the courts in securing equal treatment under the law. *Hernandez v. Texas*, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). For the purpose of applying the *Batson* equal protection analysis, we accept that a person of Native American descent is a member of a cognizable racial group. *See, e.g., Tennie v. State*, 593 So.2d 1199 (Fla.App.1992) (applying the equal protection clause to protect the rights of Native Americans); *State v. Pharris*, 846 P.2d 454, 463 (Utah App.1993), *cert. denied*, 857 P.2d 948 (Utah 1993) (same); *State v. Lopez*, 173 Wis.2d 724, 496 N.W.2d 617 (App. 1992).

The sole issue addressed by the district court, Owen and the state regarding the peremptory challenge of Buckskin, was whether the state had articulated a race-neutral reason for dismissing Buckskin as a possible juror. The prosecutor gave the following explanation for exercising the peremptory challenge:

> Your honor, the Juror Buckskin, a female juror, appearing to be Native American, I spoke with law enforcement, specifically Detective Van Vliet, about this

individual. He made a determination, just based on the information on the information sheet, that she would not be a good witness [sic] for the State.

Her reluctance in answering the questions on voir dire concern me to some extent. I did speak with Julie Nagashoah, who is the tribal investigator, works for the Fort Hall attorney's office and—about Jeannetta Buckskin; and she is also Native American. And she told me that she would not be a good juror for the State.

And based on those things, particularly her statement to that effect, I exercised one of my peremptory challenges.

The district court found that the prosecution's explanation for its peremptory challenge of Buckskin was credible. The court stated:

[The prosecutor's] explanation concerning Ms. Buckskin I think is certainly enough—sufficient to satisfy the the *Batson* neutral reason requirement. And for that reason, I would overrule any objection to the exercise of a peremptory challenge as to Ms. Buckskin.

The Idaho Supreme Court recently held that trial courts have broad discretion in formulating the necessary framework for evaluating explanations given by the state for the use of peremptory challenges after a *Batson* objection; and that—because the trial court's evaluation will depend largely upon determinations of credibility—the trial court's finding with regard to the state's explanation will be overturned on appeal only if it is clearly erroneous in light of the facts as a whole. *State v. Araiza,* 124 Idaho 82, 87, 856 P.2d 872, 877 (1993).

As in *Araiza,* the district court here "had an opportunity to observe the prosecutor and the potential jurors during voir dire and was in a better position than we are to determine the motivation of the state in challenging these jurors." 124 Idaho at 87, 856 P.2d at 877. The district court was in the best position to detect whether the prosecution's assertion that Buckskin was reluctant during voir dire to answer questions concerning her qualifications and fitness to serve as a juror was credible. Also, the prosecutor's reliance upon an opinion by the tribal investi-

gator that Buckskin would not be a good juror for the state was reasonable. Having accepted the state's race-neutral explanation, the district court overruled Owen's *Batson* objection, essentially determining that Owen had failed to meet her burden of establishing a purposeful discrimination based on race. Upon this record, we hold that the district court's decision to believe the prosecutor's explanation for its peremptory challenge of Buckskin was not clearly erroneous, and we affirm the district court's ruling.

Furthermore, having upheld the district court on this point, we decline to decide the merits of Owen's additional argument that the district court failed to determine whether the prosecutor's explanation was a true reason or was merely a pretext for a racially motivated reason, the third step in the *Batson* analysis. The district court did not decide that question, nor was it requested to do so by either party. It is well settled that, in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error. *State v. Fisher,* 123 Idaho 481, 485, 849 P.2d 942, 946 (1993); *State v. Medina,* 128 Idaho 19, 909 P.2d 637 (Ct.App. 1996). Because there is no adverse ruling below on this issue, review of the question is precluded.

### E. Amendment of a Charge.

Next, Owen claims that the district court erred in permitting the state to amend count no. 15 in the third information from the charge of attempted theft of a Jenn–Air "refrigerator" to one charging an attempted theft of a Jenn–Air "range." Owen contends that the court should have denied the state's motion to amend because the requested amendment was permitted on August 17, after the state had rested its case on August 11, 1993.

Idaho Criminal Rule 7(e) provides that:

The court may permit a complaint, an information or indictment to be amended at any time before the prosecution rests if no additional or different offense is charged

and if substantial rights of the defendant are not prejudiced.

Subject to the caveats of I.C.R. 7(e), the determination of whether the state should be allowed to amend the information rests in the trial court's discretion. *State v. Gauna*, 117 Idaho 83, 88, 785 P.2d 647, 652 (Ct.App.1989).

A review of the record discloses that Owen's argument has no merit. On August 5, 1993, during the state's case-in-chief, the state made its request to amend count 15 as noted. When the court asked Owen for her comments to the proposed amendment, she responded, "I don't have an attorney; and I, and I object to anything without having my attorney present." To accommodate Owen, the court postponed ruling on the state's request until her attorney could be present. On August 17, 1993, during the defense's case, the court realized it had failed to rule on the request. When the court revisited the issue, neither Owen nor her attorney lodged any objection.

■ The state requested the amendment of count no. 15 during its case-in-chief in order to conform to the evidence showing that Owen attempted to commit grand theft of a Jenn–Air range rather than a Jenn–Air refrigerator. The same evidence had been presented at the preliminary hearing before Owen was bound over for trial, showing that the property subject to the alleged theft was a range, not a refrigerator. Owen did not lodge any objection on the ground that the amendment violated the provisions of Rule 7(e). Under the circumstances, we hold that the district court did not abuse its discretion in permitting the state to amend count 15 in the third information.

## F. Preliminary Hearing Transcript.

The district court permitted the state to present at trial testimony by Donald Olberding through use of a preliminary hearing transcript. Olberding, an owner of Western Design, was the state's witness in support of count 17, a grand theft charge relating to drywall materials and services. Owen argues that during the preliminary hearing her counsel had an incentive not to cross-examine Olberding about any matter other than the charge of theft by deception because to do

otherwise would have unnecessarily risked revealing to the state information it could have used to charge Owen with a different alternative theory under the theft statute. Owen asserts that as a consequence, there was not a similar motive to cross-examine Olberding at the preliminary hearing as there was at the trial. Owen also argues that the nature of a preliminary hearing is fundamentally different than a trial, and urges application of *State v. Elisondo*, 114 Idaho 412, 757 P.2d 675 (1988). In *Elisondo*, our Supreme Court held that the preliminary hearing testimony of a witness not present at the time of the trial was inadmissible at trial. *Id.* Owen contends that adherence to the Court's holding in *Elisondo* would preserve and not violate her state constitutional right to due process under Art. I, § 13 of the Idaho Constitution.

Idaho Rule of Evidence 804(b)(1) provides that the following is not hearsay if the declarant is unavailable as a witness:

> Former testimony. Testimony given as a witness at another hearing of the same or different proceeding, ... if the party against whom the testimony is now offered, ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In *Elisondo*, a case that was tried before I.R.E. 804(b)(1) took effect, our Supreme Court held that preliminary hearing testimony of an unavailable witness was inadmissible at trial. The Court did not rely on constitutional grounds but, rather, relied upon considerations of public policy, stating:

> We emphasize that our decision today is not based on an asserted violation of the confrontation clause of the United States Constitution, but rather the independent right of a state to exercise its own authority in this area, and our view that public policy considerations require such decision.

114 Idaho at 415, 757 P.2d at 678. In 1989, the Idaho Legislature adopted I.C. § 9–336, which provides that:

> **Evidence from preliminary hearing— Admission—Requirements.**—Prior to admitting into evidence recorded testimony

from a preliminary hearing, the court must find that the testimony offered is:

1. Offered as evidence of a material fact and that the testimony is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

2. That the witness is, after diligent and good faith attempts to locate, unavailable for the hearing; and

3. That at the preliminary hearing, the party against whom the admission of the testimony is sought had an adequate opportunity to prepare and cross-examine the proffered testimony.

In *State v. Ricks,* 122 Idaho 856, 840 P.2d 400 (Ct.App.1992), we reiterated the Idaho legislature's lengthy statement of public policy contained in I.C. § 9–336. The legislature stated its belief that the "admission of previously recorded testimony of a preliminary hearing should be admissible under the safeguards contained within section 9–336, Idaho Code." 122 Idaho at 859, 840 P.2d at 403. The legislature also declared that it "finds that it is against public policy to adopt a per se rule excluding preliminary hearing testimony from a subsequent criminal proceeding," and that "such an exclusion provides an incentive to a criminal defendant to take steps to prevent a witness from testifying at trial." *Id.* In *Ricks,* this Court said:

[W]e conclude that a case-by-case approach is the better way to determine whether the district court was correct in ruling that the preliminary hearing testimony was admissible. Such an approach would allow the trial court to determine, as matters of fact, whether the party opposing the use of such testimony "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

Where such findings are challenged on appeal, we would apply the "clear error" standard of review. If the factual predicates of I.R.E. 804 are met, and if there are no other reasons shown under the rules for its exclusion, the court may admit the evidence at trial.

122 Idaho at 863, 840 P.2d at 408 (citations omitted).

Although Owen fails to expressly argue that the requirements of I.C. § 9–336 have not been met, we will discuss them briefly. The first requirement of I.C. § 9–336 is that the testimony be offered as evidence of a material fact and that the testimony be more probative than any other evidence the proponent can reasonably procure. The record shows that Olberding testified under oath at the preliminary hearing and was cross-examined by defense counsel. During the trial, the state told the court that no other person could testify as to the events which occurred between Owen and Olberding. Owen objected and stated that according to Olberding's testimony, Olberding had a partner. The state responded that it was "not aware of a partner." The court held that even if Olberding did have a partner, this does not necessarily mean that the partner had the same knowledge or could testify without hearsay as to the same matters as Olberding. The court then admitted in to evidence the preliminary hearing transcript.

We agree with the district court's ruling. The record shows that there is no other evidence to support count 17 other than Olberding's testimony. We conclude that this testimony was more probative on the point for which it was offered than any other evidence which could have been procured through reasonable efforts.

The second requirement of I.C. § 9–336 is also met. The record shows that substantial efforts were made to find Olberding. Jacquelyn Christensen, an employee of the prosecutor's office, testified that she had tried to locate Olberding but had been unsuccessful. The state also explained to the court that after it had learned that Olberding may be in Minnesota, it requested the assistance of the St. Paul, Minnesota, Department of Transportation. The department found a Donald Olberding in its licensing computer system, so the state made a written request for additional information. However, at this point in the trial, the state had not received a response from the Minnesota Department of Transportation. The state told the court that it could not guarantee that the Mr.

Olberding in Minnesota was the same Mr. Olberding it sought with regard to this case. The state further explained that it would not be able to provide additional information until it heard from the Minnesota Department of Transportation. The record provides no indication of when a response from the Minnesota Department of Transportation was expected.

The third and final requirement of the statute is that the party against whom the admission of the testimony is sought had an adequate opportunity to prepare and cross-examine the proffered testimony. As noted, Owen argues that she did not have a "similar motive" to cross-examine Olberding at the preliminary hearing. We disagree. The record shows that Mr. Southworth, Owen's counsel during the preliminary hearing, cross-examined Olberding. The record also shows that jury instruction no. 18U, relating to count 17, mandates that the jury must find that Owen had obtained the property (by referring to jury instructions nos. 15 and 16) through either deception or false promise. Therefore, the manner in which the theft in count 17 was alleged to have occurred remained consistent in both proceedings. I.R.E. 804(b)(1) requires only that the motives for cross-examination at the preliminary hearing and the trial be similar. Rule 804(b)(1) does not require that the motives be identical. This requirement has been met as well.

We conclude that the court did not err in admitting Olberding's testimony into evidence through the preliminary hearing transcript because Owen's motive for cross-examining Olberding at the preliminary hearing was similar to the motive she had during the trial.

## G. Jury Instructions.

Owen next claims that jury instruction nos. 11 and 16 violated her right to due process under the state and federal constitutions be-cause both instructions permitted conviction upon evidence proving guilt to a "moral certainty" rather than proof beyond a reasonable doubt. She argues that use of the phrase "moral certainty" lessened the state's burden of proof and, consequently, constituted fundamental error.

Owen attempts to differentiate her case from *Sandoval v. California,* a case consolidated with *Victor v. Nebraska,* both reported at 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Sandoval,* the defendant objected to the use of the term "moral certainty" in the reasonable doubt instruction, arguing that even though "proof to a moral certainty" is an equivalent phrase to "beyond a reasonable doubt," "moral certainty" has lost its historical meaning and, as a consequence, a modern jury would understand it to allow conviction on less proof than required by due process. 511 U.S. at 1–3, 114 S.Ct. at 1241, 127 L.Ed.2d at 588–89. The United States Supreme Court conceded that the phrase, standing alone, might not be recognized by modern jurors as a synonym for proof beyond a reasonable doubt. 511 U.S. at 13–14, 114 S.Ct. at 1247, 127 L.Ed.2d at 595. However, the Supreme Court found that the defendant's conviction need not be reversed because other jury instructions given by the trial court clarified the phrase's meaning. 511 U.S. at 14–15, 114 S.Ct. at 1247, 127 L.Ed.2d at 596. Owen claims that the remaining jury instructions in her case did not clarify the meaning of "moral certainty" for the jury.

The district court defined reasonable doubt using the California Jury Instruction (CALJIC) approved by the Idaho Supreme Court in *State v. Cotton,* 100 Idaho 573, 577, 602 P.2d 71, 75 (1979), and *State v. Holm,* 93 Idaho 904, 908, 478 P.2d 284, 288 (1970).[12] Our Supreme Court has upheld the constitutionality of this instruction. *State v. Hoffman,* 123 Idaho 638, 643, 851 P.2d 934, 939 (1993); *State v. Rhoades,* 121 Idaho 63, 82–83, 822 P.2d 960, 979–80 (1991). In *State v.*

---

**12.** The CALJIC reasonable doubt instruction reads as follows:

> Reasonable doubt is defined as follows: It is not a mere possible doubt because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

*Cagle,* 126 Idaho 794, 891 P.2d 1054 (Ct.App. 1995), we acknowledged the United States Supreme Court's holding in *Victor v. Nebraska, supra,* and *Sandoval v. California, supra. Id.* at 798–99, 891 P.2d at 1058–59. In these cases the United States Supreme Court held that although it did not endorse use of the phrase "moral certainty," the CALJIC instruction, taken as a whole, did not violate due process. 511 U.S. at 16–17, 114 S.Ct. at 1248, 127 L.Ed.2d at 597. Based on the foregoing, we conclude that the jury in this case was properly instructed with respect to the definition of reasonable doubt.

**H. Psychological Evaluation.**

Finally, Owen claims that the district court violated her right against self-incrimination under the state and federal constitutions by requiring her to submit to a psychological evaluation. Owen argues that the psychological evaluation itself does not indicate that she was advised of her right against self-incrimination, nor does it show that the psychologist warned her that what she said could be used against her at sentencing. She suggests that as a consequence of not being advised of her rights, the state used the psychological evaluation effectively at the sentencing hearing to argue against probation and retained jurisdiction.

We deem the record provided to us by Owen insufficient to demonstrate that any reversible error occurred. While the record shows that the district court did not advise Owen of her right against self-incrimination when the presentence report was ordered, the record is undeveloped with regard to whether Owen was advised of her right at another time by the court or by the psychologist, or the possibility that Owen knowingly waived her constitutional protections against self-incrimination when she participated in the psychological evaluation. Indeed, the record contains a very detailed objection by Owen to the presentence report but she fails in that objection to assert any violation of a right against self-incrimination with regard to obtaining information for the report. As a result, the question of violation of a right against self-incrimination evidently was not submitted to the district court for decision; the district court did not rule on the issue; and the record is insufficient for us to declare that any error occurred on the part of the district court with regard to use of the psychological evaluation. It is elementary that an appellant must present a sufficient record to adequately evaluate the merits of an alleged claim of error. *State v. Chavez,* 120 Idaho 460, 816 P.2d 1017 (Ct.App.1991).

## IV. CONCLUSION

For the reasons stated, we conclude that the district court did not err in holding that the informations were sufficiently pled; the theft charges did not violate Art. I, § 15 of the Idaho Constitution; the court's jury instructions given by the court were not unconstitutional nor did they violate Owen's right to due process; the state's use of a peremptory challenge to dismiss a Native American was not unconstitutional; and that the state appropriately amended count no. 15 in the third information pursuant to I.C.R. 7(e). We also hold that the court appropriately appointed counsel over Owen's objections, and that it did not err in either admitting Olberding's preliminary hearing transcript. We find the record insufficient to determine Owen's contention that a psychological evaluation for the purpose of sentencing was conducted in violation of Owen's right against self-incrimination.

Consequently, we uphold Owen's convictions and affirm the sentences imposed by the district court.

LANSING and PERRY, JJ., concur.