945 P.2d 864

**STATE of Idaho, Plaintiff–Respondent,**

v.

**William James HENNINGER, Defendant-Appellant.**

No. 22619.

Court of Appeals of Idaho.

Aug. 25, 1997.

Rehearing Denied Oct. 22, 1997.

Randall D. Schulthies, Bannock County Public Defender; Thomas E. Eckert, Deputy Public Defender (argued), Pocatello, for Defendant–Appellant.

Alan G. Lance, Attorney General; Jon T. Simmons, Deputy Attorney General (argued), Boise, for Plaintiff–Respondent.

LANSING, Chief Judge.

This is an appeal from a judgment of conviction for the theft of a pickup from a vehicle dealership. The defendant had been allowed to take the pickup from the dealership after he signed an installment sale contract to purchase the vehicle and a $5,000 short-term promissory note for the "down payment." When the defendant neither paid the promissory note nor returned the vehicle, he was charged with grand theft by unauthorized control, I.C. § 18–2403(3), and he was found guilty following a jury trial. We hold that the evidence is insufficient to sustain the finding of guilt of the crime as charged, and we therefore reverse the judgment of conviction.

## FACTS

The trial evidence showed that during the morning of June 5, 1995, William James Henninger arrived at the Phil Meador Toyota dealership in Pocatello (hereinafter "the dealership") and stated that he was interested in purchasing a pickup. He selected a 1991 Toyota pickup and reached a mutually agreeable price with the salesman. According to the salesman's testimony, Henninger represented that his parents in Nevada were holding $5,000 that Henninger had received as an insurance settlement and that he could have his parents wire the money to him that same day for use as a down payment. The dealership agreed to sell the truck to Henninger, taking as a "down payment" a $5,000 promissory note due the next day, June 6, 1995. The balance of the purchase price was financed under terms of an installment sale contract. Both parties signed a purchase order and the installment sale contract, and Henninger signed the $5,000 promissory note. The dealership also prepared and placed in the rear window of the pickup a temporary registration form and executed and delivered to Henninger an application form for issuance of a certificate of title in Henninger's name. According to dealership employees, they then allowed Henninger to drive away in the pickup with the understanding that he would return later that day

to pay the $5,000 promissory note for the down payment. When Henninger did not return, dealership personnel attempted to contact him and found that he no longer lived at the residence address he had given them, that he had not returned to his employment after the date of the pickup purchase, and that the Nevada address and telephone number he had given for his parents were false. An employee of the dealership then contacted law enforcement authorities and reported the pickup stolen. Nineteen days after the purchase, Henninger was arrested and charged with grand theft by unauthorized control.

The case was tried before a jury. At the close of the State's case-in-chief, Henninger moved for a judgment of acquittal under Idaho Criminal Rule 29, arguing that the evidence showed only a breach of contract, not a theft. This motion was denied, and Henninger then testified in his own defense. The jury returned a guilty verdict. Henninger now appeals from the judgment of conviction, contending that the court erred in denying his motion for a judgment of acquittal and that the court committed several other trial errors.

## ANALYSIS

Henninger asserts that the facts introduced at trial show a contract dispute over nonpayment of the promissory note, that the appropriate remedy lies in the civil law arena, and that in light of the contract between Henninger and the dealership there was no demonstrated theft by unauthorized control.

■ Henninger frames this issue on appeal as an assertion of error in the district court's denial of his motion for a judgment of acquittal at the conclusion of the State's evidence. However, by presenting evidence in defense at trial, Henninger waived any objection to the denial of that motion. *State v. Watson*, 99 Idaho 694, 698, 587 P.2d 835, 839 (1978). This Court, therefore, will conduct a review of all of the evidence presented at trial to determine whether it is sufficient to support the jury's verdict. *Id., citing State v. Gardner*, 231 Or. 193, 372 P.2d 783, 784 (1962). On appellate review, a jury verdict finding the defendant guilty of a crime will not be disturbed if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Ashley*, 126 Idaho 694, 696, 889 P.2d 723, 725 (Ct.App.1994). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *Id.; State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). If, after viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence is insufficient to support the guilty verdict, the judgment must be reversed. *State v. Warden*, 97 Idaho 752, 754, 554 P.2d 684, 686 (1976); *State v. Whiteley*, 124 Idaho 261, 270, 858 P.2d 800, 809 (Ct.App.1993).

■ The theft offense with which Henninger was charged is defined as follows: "A person commits theft when he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the intent of depriving the owner thereof." I.C. § 18–2403(3).[1] The question before us is whether there was substantial evidence to support the jury's finding that Henninger's possession of the pickup constituted "unauthorized control" of property of which he was not the "owner," as those terms are used in Section 18–2403(3).

We begin by noting that, as the State acknowledges, Henninger did not exercise unauthorized control when he took possession of the vehicle on June 5, 1995. The

---

1. The information alleged that Henninger committed this offense in the following manner:
   That the said William James Henninger in Pocatello, in the County of Bannock, State of Idaho, on or about the 6th day of June, 1995, did then and there wilfully, unlawfully, and feloniously exercise unauthorized control of certain property of another, to wit: 1991 Toyota X–Cab 4 X 4, said property having a value in excess of $300.00, lawful money of the United States, owned by Phil Meador Toyota, with the intent of depriving the owner, of its property.

State's own evidence showed that a transaction was completed by which the dealership had sold the pickup to Henninger before he drove it away. The installment sale contract executed by both parties provided that Henninger was purchasing the pickup, with the dealership retaining a security interest in the vehicle to secure Henninger's obligation to make installment payments. The dealership also signed and delivered to Henninger the documents necessary to transfer title and placed a temporary registration form in the window of the pickup. The dealership thus relinquished to Henninger all the badges of ownership and did everything that it could do to transfer title to him. Consequently, when Henninger drove away in the pickup, it was not the property of another "owner" and his control of the vehicle was not "unauthorized." Indeed, under the parties' contract, the dealership had no further right to possession except to the extent that it would be entitled to repossess the vehicle upon default by terms of the security agreement and Idaho law governing the rights of secured creditors.

It is the State's theory that Henninger's right to possess the pickup ended when he failed to pay the promissory note on the June 6 due date, and that his possession thereby became unauthorized control. Henninger, on the other hand, contends that this default was merely a breach of contract without implications in the criminal law. Resolution of this issue turns upon interpretation of the statute defining the offense of theft by unauthorized control.

In construing a statute, our objective is to ascertain and effectuate the intent of the legislature. *Kootenai Electric Co-op., Inc. v. Washington Water Power Co.,* 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995); *Carpenter v. Twin Falls County,* 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984); *State v. Martinez,* 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct. App.1995). To accomplish this, statutes must be construed as a whole, without separating one provision from another. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539, 797 P.2d 1385, 1387 (1990). When it is a criminal statute that is at issue, the court must construe the statute strictly and in favor of the defendant. *State v. McCoy,* 128

Idaho 362, 365, 913 P.2d 578, 581 (1996); *State v. Barnes,* 124 Idaho 379, 380, 859 P.2d 1387, 1388 (1993); *Martinez, supra.* This was explained by the Idaho Supreme Court in *State v. Hahn,* 92 Idaho 265, 441 P.2d 714 (1968), as follows:

A statute defining a crime must be sufficiently explicit so that all persons subject thereto may know what conduct on their part will subject them to its penalties. A criminal statute must give a clear and unmistakable warning as to the acts which will subject one to criminal punishment, and courts are without power to supply what the legislature has left vague. An act cannot be held as criminal under a statute unless it clearly appears from the language used that the legislature so intended.

*Id.* at 267, 441 P.2d at 716 (citations omitted).

In reviewing I.C. § 18–2403(3), which defines theft by unauthorized control, we are not persuaded that the legislature intended the statute to apply where a purchaser in a secured credit sale has defaulted in payments and the creditor has thereby become entitled to retake possession of the goods. We acknowledge that Idaho Code Section 18–2402(6) defines "owner" for purposes of the theft statute as follows: "When property is taken, obtained, or withheld by one (1) person from another person, an owner means any person who has a right to possession thereof superior to that of the taker, obtainer, or withholder." It may be legitimately argued that under this definition, a party who holds only a security interest becomes the "owner" of the goods upon the debtor's default because the default gives the secured party the right of possession superior to that of the purchaser. We think it unlikely, however, that the Idaho legislature, in adopting I.C. §§ 18–2402(6) and 18–2403(3), intended to render criminal the conduct of every person who misses a payment on a secured credit purchase and does not immediately comply with a contractual obligation to relinquish possession of the collateral to the secured seller.

We base our conclusion, in part, upon a provision elsewhere in Section 18–2403. In subsection (2)(d) defining theft by false promise (of which more will be said later in

this opinion), the legislature took care to provide that a fraudulent intent not to perform a promise at the time it was made "may not be established by or inferred from the fact alone that such promise was not performed." If the legislature did not allow the offense of theft by false promise to be predicated solely upon the fact that a promise was breached, it appears unlikely that, elsewhere in the same statute, the legislature intended to allow prosecution for theft by unauthorized control based solely upon the breach of a contractual promise.

Our conclusion that the legislature did not intend the retention of collateral after default on a secured obligation to constitute theft by unauthorized control is also based upon the traditional separation between criminal law and contract law. Our Supreme Court observed in *State v. Jesser*, 95 Idaho 43, 50, 501 P.2d 727, 734 (1972), that there has been an "evolved tradition against enforcing contractual obligations through the criminal law." The reasons for this tradition include "the improbability of preventing honest insolvency by threat of prosecution, the danger of discouraging healthy commercial risk-taking or of obtaining unjust convictions by hindsight, the futility of imprisoning a debtor unable to pay, and the concept that the seller or lender must select and accept his risks." *Id.* The present case directly implicates the last of these reasons. Without a more explicit expression of intent by the legislature to abandon this customary separation of criminal law from civil contract enforcement, we will not conclude that the legislature intended unau-

thorized control under I.C. § 18–2403(3) to encompass possession by a debtor who, by defaulting on a payment, has become contractually obligated to return the collateral to the creditor, or that the legislature intended the theft statute to be a mechanism that would aid the repossession efforts of secured creditors.[2] It follows that the evidence presented in Henninger's trial did not show a violation of I.C. § 18–2403(3).

Lest our opinion be misunderstood, a further observation is warranted regarding Idaho's theft statutes and Henninger's alleged conduct. The Idaho legislature has provided a means to prosecute for theft persons who obtain goods from sellers by fraud or artifice. Idaho Code Section 18–2403(2)(a) provides that theft is committed when, with the intent to deprive another of property, a person obtains or exerts control over property of the owner "by deception." In addition, I.C. § 18–2403(2)(d) describes the offense of theft by false promise as follows:

1. A person obtains property by false promise when pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.

2. In any prosecution for theft based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established

---

**2.** If Section 18–2403(3) were applicable to such a circumstance, it would call for a jury determination of whether the creditor had become contractually entitled to repossess the goods. This would sometimes require that the jury first interpret the terms of an ambiguous contract. The present case illustrates that this could become a complex task. The installment sale contract here provided that the seller would retain a security interest in the pickup to secure the purchaser's obligation to make the monthly payments required *under the installment sale contract,* but it did not expressly provide that Henninger's obligation on the $5,000 promissory note was also secured. Only if the parties intended the security interest to cover the note would Henninger's failure to pay the note trigger the right of the dealership to repossess the pickup. This may have presented a question of contract interpreta-

tion for the jury. Moreover, the terms of the installment contract pertaining to repossession upon default obligated Henninger to take affirmative steps to return the collateral only upon "demand" or "request" of the seller. There was no evidence at trial that such a demand or request was actually conveyed to Henninger after his default on the note, although it could be argued that the evidence that he evaded the dealer's efforts to contact him showed a breach of this contract term. Here, however, the jury was not instructed to determine whether the note obligation was secured or whether Henninger's conduct amounted to a breach of his obligation to return the collateral on demand even though such findings would be a necessary predicate to a finding that his control of the vehicle was "unauthorized."

by or inferred from the fact alone that such promise was not performed. Such a finding may be based only upon evidence establishing that the facts and circumstances of the case are consistent with guilty intent or belief and inconsistent with innocent intent or belief, and excluding to a moral certainty every reasonable hypothesis except that of the defendant's intention or belief that the promise would not be performed.

Based upon the evidence elicited at trial, it appears that Henninger could have been charged with theft by deception or theft by false promise. There was evidence that Henninger gave the dealership false information about his employment history, his bank account, his parents' address and telephone number and funds purportedly held on his behalf by his parents. From this evidence, a jury could reasonably conclude that Henninger acquired control of the pickup by deception. A jury also reasonably could infer that, at the time Henninger signed the promissory note, he did not intend to pay it and that he thus acquired possession of the vehicle by a false promise. Here, however, the prosecutor elected not to charge Henninger with theft by deception or by false promise. The prosecutor may have made this choice in order to avoid the burden of proving Henninger's fraudulent intent at the time he signed the promissory note.[3]

▪ Throughout its arguments, the State has alluded to the evidence of deception by Henninger as a basis to sustain the conviction. However, because the State did not allege, and the jury was not asked to determine, that Henninger obtained the vehicle by false promise or other deception, this evidence is essentially irrelevant to our inquiry on appeal regarding proof of theft by unauthorized control. This Court cannot sustain Henninger's conviction on the basis that the trial evidence proved the elements of an offense with which he was not charged and which the jury was not asked to address. *See United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (holding that the constitution requires criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime beyond a reasonable doubt); *Jackson,* 443 U.S. at 314, 99 S.Ct. at 2786 ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."); *State v. Grady,* 89 Idaho 204, 211, 404 P.2d 347, 351 (1965) (holding that an information must be specific enough to advise the defendant as to the particular section of the statute he or she is being charged with having violated and set forth the facts constituting the alleged offense); *State v. Owen,* 129 Idaho 920, 935 P.2d 183, 189 (Ct.App.1997) (same).

## CONCLUSION

Because we hold that the evidence does not support the jury's verdict finding Henninger guilty of grand theft by unauthorized control, we need not address the remaining issues raised by Henninger on appeal. Henninger's judgment of conviction is reversed.

WALTERS and PERRY, JJ., concur.

---

3. When the district court denied Henninger's motion for a judgment of acquittal at the close of the State's case, the court was evidently under the misperception that Henninger had been charged with theft by false promise, for in denying the motion, the court said, "The real question is one of intent and that is intent at the time of obtaining possession of that vehicle and whether or not the defendant clearly had no intention of paying the $5,000 down payment or any realistic ability to do so at the time he made those representations."