108 P.3d 370

**IDAHO CARDIOLOGY ASSOCIATES, P.A., an Idaho corporation, Plaintiff–Appellant,**

v.

**IDAHO PHYSICIANS NETWORK, INC., an Idaho corporation, Defendant–Respondent.**

No. 30365.

Supreme Court of Idaho, Boise, January 2005 Term.

Feb. 22, 2005.

---

Eberle, Berlin, Kading, Turnbow and McKlveen, Chtd., Boise, for appellant. Warren E. Jones argued.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, PA., Boise, for respondent. Kimball D. Gourley argued.

BURDICK, Justice.

This case arises from a dispute between Idaho Cardiology Associates (Cardiology) and Idaho Physicians Network (Physicians Network), wherein Physicians Network refused to admit Cardiology into its network. Cardiology sued Physicians Network arguing Physicians Network was subject to the "any willing provider" statute, I.C. § 41–3927, and therefore Physicians Network must enter into provider service agreements with Cardiology and its physicians. The district court granted summary judgment in Physicians Network's favor, finding it was not subject to the statute. Cardiology timely appealed. We hold the district court erred in granting summary judgment. We reverse the order granting summary judgment, vacate the judgment in favor of the respondent, and remand this case for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

Cardiology is a professional medical corporation comprised of seventeen physicians practicing cardiology medicine. Physicians Network is a marketing and administrative entity that markets the services of health care providers to insurance companies and self-insured employers. In 2003, Physicians Network provided a list of physicians to 52 providers (insurance companies). Physicians

Network affiliated with Primary Health, Inc. (Primary Health) in 1998; Primary Health is Physicians Network's majority shareholder owning 60% of the company.

Primary Health is the umbrella corporation for Primary Health Network. Primary Health Network is the insurance arm of Primary Health and one of Physicians Network's 52 providers. Physicians Network and Primary Health Network are subsidiary corporations of Primary Health. Physicians Network is the only company providing physician names to Primary Health Network.

In 1996, Cardiology contracted with Primary Health to provide cardiology services to persons enrolled in certain benefit plans. In 1998, the contract was assigned to Physicians Network. In 1999, Physicians Network admitted it was subject to the any willing provider statute and could not negotiate different contract terms with its providers. In a letter written to Cardiology in response to an earlier complaint which arose before the instant dispute, Physicians Network informed Cardiology that the "Any Willing Provider law essentially makes it impossible for [Physicians Network] to cut special deals with providers since all other providers are then entitled to contract on the same terms." Subsequently Cardiology voluntarily withdrew from Physicians Network.

In 2001, Cardiology applied for readmission to Physicians Network, but Physicians Network denied the request. The stationary used contained Idaho Physicians Network's name at the top and at the bottom it stated: "Administered by Primary Health, Inc." Physicians Network has panels for particular specialty practices; each panel has only a limited number of physicians. Physicians Network denied admission to Cardiology because the cardiology panel was "closed." Cardiology filed suit, seeking to invoke the any willing provider statute in order to compel Physicians Network to accept Cardiology as a qualified provider.

Both Physicians Network and Cardiology moved for summary judgment. The district court granted judgment in Physicians Network's favor finding the any willing provider statute inapplicable to Physicians Network. Therefore, Physicians Network did not have to admit Cardiology as a qualified willing provider into the network.

Cardiology asks this Court to determine if the district court erred in granting summary judgment.

## ISSUES

I. Did the district court err in granting summary judgment because Physicians Network must comply with the any willing provider statute I.C. § 41–3927?

II. Should either party be awarded attorney fees and should the district court's award of costs to Physicians Network be reversed on appeal?

## STANDARD OF REVIEW

▇▇▇ The issue presented on appeal involves the interpretation and application of the any willing provider statute I.C. § 41–3927. "The determination of the meaning of a statute and its application is a matter of law over which this Court exercises free review." *Woodburn v. Manco*, 137 Idaho 502, 504, 50 P.3d 997, 999 (2002). The words must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). The Court's primary duty in interpreting a statute is to give effect to the legislative intent and purpose of the statute. *Adamson v. Blanchard*, 133 Idaho 602, 605, 990 P.2d 1213, 1216 (1999); *Bannock County v. City of Pocatello*, 110 Idaho 292, 294, 715 P.2d 962, 964 (1986). The legislature's intent is ascertained from the statutory language and the Court may seek edification from the statute's legislative history and historical content at enactment. *Adamson*, 133 Idaho at 605, 990 P.2d at 1216.

## ANALYSIS

I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE PHYSICIANS NETWORK IS PART OF A MANAGED CARE ORGANIZATION AND MUST COMPLY WITH THE ANY WILLING PROVIDER STATUTE.

Cardiology appeals the district court's decision granting summary judgment to Physi-

cians Network. Cardiology argues the district court erred in finding the any willing provider statute inapplicable to Physicians Network. Cardiology contends that Physicians Network is part of a "managed care organization" and thus, by its plain language, the any willing provider statute is applicable to Physicians Network. Alternatively, Cardiology argues the any willing provider statute is applicable to Physicians Network by virtue of I.C. § 41–3904.

In 1994, the legislature adopted the any willing provider statute, I.C. § 41–3927. The statute provides in pertinent part:

> Any **managed care organization** issuing benefits pursuant to the provisions of this chapter shall be ready and willing **at all times** to enter into care provider service agreements with **all qualified providers** of the category or categories which are necessary to provide the health care services covered by an organization if the health care providers: are qualified under the laws of the state of Idaho, desire to become participant providers of the organization, meet the requirements of the organization, and practice within the general area served by the organization.

I.C. § 41–3927 (emphasis added).

> "Managed care organization" means a public or private person **or organization** which offers a managed care plan. Unless otherwise specifically stated, the provisions of this chapter shall apply to any person or organization offering a managed care plan, whether or not a certificate of authority to offer the plan is required under this chapter.

I.C. § 41–3903(14) (emphasis added). A person is defined as "any natural or artificial person including, but not limited to, individuals, partnerships, associations, corporations or other legally recognized entities." I.C. § 41–3903(17). Notably, the word "organization" is not defined.

> "Managed care plan" means a contract of coverage given to an individual, family or group of covered individuals pursuant to which a member is entitled to receive a defined set of health care benefits through an organized system of health care providers in exchange for defined consideration

and which requires the member to use, or creates financial incentives for the member to use, health care providers owned, managed, employed by or under contract with the managed care organization. A person holding a license to transact disability insurance offering a health plan that creates financial incentives to use contracting providers may elect to file the plan as a nonmanaged care plan not subject to the provisions of this chapter if the health plan reimburses providers solely on a fee for service basis and does not require the selection of a primary care provider. The election to file a health plan as a nonmanaged care plan shall be made in writing at the time the plan is filed with the director pursuant to chapter 18, title 41, Idaho Code.

I.C. § 41–3903(15).

 "In construing a statute, the Supreme Court may examine the language used, reasonableness of the proposed interpretations, and the policy behind the statutes." *Sweitzer v. Dean,* 118 Idaho 568, 571–572, 798 P.2d 27, 30–31 (1990). "It is a cardinal rule of statutory construction that all parts of a statute should be given meaning." *Robbins v. County of Blaine,* 134 Idaho 113, 120, 996 P.2d 813, 820 (2000). We will construe a statute "so that effect is given to its provisions, and no part is rendered superfluous or insignificant." *Petersen v. Franklin County,* 130 Idaho 176, 181, 938 P.2d 1214, 1219 (1997).

Our legislature defined managed care organization to mean either a "person" or an "organization." I.C. § 41–3903(14). The legislature did define "person," but failed to define "organization." The legislature defined person as "individuals, partnerships, associations, corporations or other legally recognized entities." I.C. § 41–3903(17). Contrary to Primary Health's assertion, "organization" must mean something other than a business entity already embraced by the term "person." To construe the statute otherwise would render the term "organization" superfluous, which we will not do.

 BLACKS LAW DICTIONARY 1133 (8th ed.2004) defines an organization as "1. A

body of persons (such as a union or corporation) formed for a common purpose.—Also termed *society*. 2. UNION." The term has also been defined as "an administrative and functional structure (as a business or political party); *also:* the personnel of such a structure[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 819 (10th ed.1993). We hold that organization as used in I.C. § 41–3903(14) means a group of "persons" as defined in I.C. § 41–3903(17) combined for a common purpose. We do not believe I.C. §§ 41–3904, 41–3905, 41–3906, or 41–3922 are inconsistent with our interpretation.

■ It is undisputed that Primary Health Network, the business entity providing managed care plans to the public, is itself a managed care organization as defined in I.C. § 41–3903(14). However, the critical question is whether or not the other affiliated corporate entities, Primary Health, Inc. and Physicians Network, are also part of the managed care organization—formed for a common purpose—making them subject to the any willing provider law. In other words did Physicians Network, Primary Health, and Primary Health Network join together to form an "organization" to deliver a managed care plan to the public?

According to the record, Primary Health's website states as follows: "Primary Health is **an integrated health care delivery system** consisting of a managed care insurance company (Primary Health Plan), a multi-specialty medical group (Primary Health Medical Group), and a provider network (Idaho Physicians Network) providing services throughout Idaho and eastern Oregon." (Emphasis added.)

Primary Health's internet website goes into a detailed and candid description of the Primary Health family of corporations, and their relationship to each other:

Idaho Physicians Network is the delivery system for health insurance companies outside the state of Idaho and employer groups who self-insure and the medical providers and facilities with whom they need to contract those services. Medical providers become members of Idaho Physicians Network to simplify the process of becoming contracted and credentialed with numerous payers. The payers, in turn, 'rent' the network created by Idaho Physicians Network to avoid the arduous task of contracting with providers and facilities one at a time. **Together, Primary Health Plan, Primary Health Medical Group and Idaho Physicians Network have made Primary Health the fastest growing health care delivery system in the state of Idaho.**

(Emphasis added.) Primary Health's website provides an organizational chart which illustrates the manner in which these "separate" corporations are interconnected. The website also discloses that Primary Health owns three other subsidiary entities.

All of the related entities have been carefully designed to function together so that Primary Health Network can efficiently deliver managed health care. Without Physicians Network, Primary Health Network has no group of physicians to whom it can refer patients. It is clear that while Physicians Network acting alone may not have all the attributes of a managed care organization, it is an integral part of the managed care organization comprised of the several combined entities.

"When interpreting a statute, the primary function of the Court is to determine and give effect to the legislative intent." *Dyet v. McKinley*, 139 Idaho 526, 528, 81 P.3d 1236, 1238 (2003). In our view, the Idaho Legislature's primary purpose in enacting the any willing provider statute was to preserve, to the maximum extent possible, the right of a

patient to select his own treatment provider, subject only to the provider's willingness and ability to comply with the basic requirements of the managed care plan. *See,* RSO 3898C1 (Statement of Purpose).

The district court's narrow reading of the any willing provider statute would contravene this basic objective, and so construed, the statute would have the potential to become the single biggest impediment to the accomplishment of the important public policy which prompted the legislature to enact the statute to begin with.

We hold that the collection of corporate entities owned in whole or in part by Primary Health, including Physicians Network, constitute an "organization" as that term is used in I.C. § 41–3903(14), and as such constitute a "managed care organization" as defined in that provision. As an integral and inseparable part of a managed care organization, Physicians Network is clearly subject to the requirements of I.C. § 41–3927, the any willing provider statute. As a result, the Idaho Physicians Network was statutorily obligated, as a matter of law, "At all times to enter into care provider service agreements with all qualified providers" like Cardiology.

The district court erred in holding otherwise, and its order granting summary judgment in favor of Physicians Network is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.

II. THE DISTRICT COURT'S AWARD OF COSTS TO PHYSICIANS NETWORK SHOULD BE VACATED. NEITHER PARTY IS ENTITLED TO RECOVER ATTORNEY FEES ON APPEAL.

██ Although Cardiology is the prevailing party on appeal, it failed to present any argument in its opening brief that the district court erred in awarding costs to Physicians Network or that they are entitled to attorney fees on appeal. However, Cardiology did list the award of costs in its notice of appeal and argues in its reply brief that by virtue of this Court's decision the award should automatically be affirmed or reversed. Cardiology concedes it has waived its right to claim attorney fees on appeal and asserts that an award is not appropriate for either party.

Because we reverse the district court's summary judgment order, Cardiology has become the prevailing party on all of the litigated claims. Therefore, this Court must vacate the district court's allocation of costs and fees, which was made on the premise that Physicians Network prevailed. *Erickson v. Flynn,* 138 Idaho 430, 436, 64 P.3d 959, 965 (2002). As the prevailing party on appeal, this Court awards costs to Cardiology, but not attorney fees.

Physicians Network is not the prevailing party and therefore is not entitled to attorney fees.

### CONCLUSION

Because the any willing provider statute, I.C. § 41–3927, applies to Physicians Network, this Court reverses the district court's order granting summary judgment to Physicians Network and remands this matter for further proceedings consistent with this opinion. Physicians Network is part of a managed care organization. As such, they must comply with the any willing provider law. Costs, but not attorney fees are awarded to Cardiology.

Justice EISMANN and Justices Pro Tem, HART, HOHNHORST and WOODLAND concur.