193 P.3d 869

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Coreen Rae CULBRETH, Defendant–Appellant.**

No. 33842.

Court of Appeals of Idaho.

June 9, 2008.

Review Denied Sept. 24, 2008.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Coreen Rae Culbreth challenges her conviction for burglary on the ground that the State did not prove the mental element of the offense. She asserts that the trial evidence did not establish that she entered into a building with the intent to commit a theft. We agree, and therefore we reverse.

## I.

### BACKGROUND

The State charged Culbreth with misdemeanor malicious destruction of property, Idaho Code § 18–7001,[1] and with a felony burglary, I.C. § 18–1401, for allegedly having broken into an animal shelter with the intent to commit theft. The following facts were established at trial. A benevolent citizen found a dog running loose in the city of Coeur d'Alene, and after making several unsuccessful attempts to reach the owner at phone numbers printed on the dog's tags, took the dog to the Coeur d'Alene Animal Shelter. Later in the day, Culbreth, who owned the dog, returned the citizen's telephone call and was informed of the dog's location. Culbreth was distressed about her dog and told the citizen that she was concerned about fees that would be owed to the shelter. Although the shelter was closed for the day, the two went to the location hoping

---

1. The destruction of property charge stemmed from damage Culbreth caused to the shelter's door in gaining entry to the building. The cost of repairing the door was $32.08.

to find a worker present, but no one was there. After the citizen left, Culbreth broke into the shelter through a side door, found her dog, and left with it, taking no items other than the dog. Culbreth's entry into the building and her movements were captured on the shelter's video surveillance system. The manager of the shelter testified that when owners come to recover their animals from the shelter, they are required to pay impounding, processing and boarding fees. Culbreth, having broken in to get her dog, had paid no fees.

The jury convicted Culbreth of both malicious destruction of property and burglary. Culbreth appeals only the felony burglary conviction on the ground of insufficiency of evidence. She maintains that although she illegally broke into the animal shelter, there was no evidence that she intended to do so with the intent to commit a theft or any felony, which is an essential element of a burglary offense.

## II.

## ANALYSIS

The statute that Culbreth was charged with violating, Idaho Code § 18–1401, defines burglary as follows:

> Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, vehicle, trailer, airplane or railroad car, *with intent to commit any theft or any felony,* is guilty of burglary.

The charging information alleged that Culbreth entered the animal shelter with the intent to commit the crime of theft, and the jury was instructed that in order to find guilt, it must find, among other elements, that "at the time entry was made, the defendant had the specific intent to commit theft." Culbreth argues that as a matter of law she could not be found guilty under this statute and instruction because her only intent was to take her own dog and "one cannot steal what he already owns." *State v. Fedder,* 76

Idaho 535, 545, 285 P.2d 802, 808 (1955) (Keeton, J., dissenting).

The State does not take issue with this general proposition of law, and it makes no argument on appeal that the shelter had a lien upon or other property interest in the dog superior to Culbreth's ownership interest. Instead, the State correctly points out that Culbreth was not prosecuted on a theory that she entered the building to steal her own dog, but rather on the theory that when she entered the shelter, she did so with the intent to steal by evading payment of the fees that she then owed to the shelter. The record is entirely clear that the prosecutor did not assert that Culbreth could be found guilty of burglary for entering the animal shelter with an intent to steal her own dog. In his closing argument, the prosecutor made clear that he was not contending that Culbreth intended to steal her dog, but instead that she broke into the building with the intent to commit theft by avoiding payment of the shelter's fees. This prosecutorial theory was also discussed by the parties and the trial court in some detail at a hearing on Culbreth's motion for a judgment of acquittal, which, like this appeal, was based on Culbreth's contention that evidence was insufficient to show an intent to commit theft.

Despite this clarity of the record regarding the State's theory below, on appeal Culbreth's attorney argues only against a theory that was never advanced by the State—that Culbreth intended to steal her own dog. Whether this misdirected briefing was a result of negligent inattention to the content of the record or inexplicable mischaracterization of the theory of the prosecution, this error renders the appellant's briefing valueless to this Court.[2] Nevertheless, because the appellant's brief states a cognizable issue—whether there was evidence that Culbreth intended to enter the building with an intent to commit theft sufficient to sustain her conviction for burglary, and supported it with appropriate legal authority and some argument, however misdirected, we will address the issue based upon the actual theory

---

**2.** Even after having received the State's respondent's brief noting the misdirection of the appellant's brief, Culbreth's appellate attorney elected to neither file a reply brief nor move to file a substitute appellant's brief.

of prosecution that was presented to the jury and argued by the State in its respondent's brief.

Whether the trial evidence satisfied the intent-to-commit-theft element of the I.C. § 18–1401 definition of burglary turns upon the meaning of "theft." The statute proscribing theft, Idaho Code § 18–2403, defines that offense, so far as relevant to this case, as follows:

> (1) A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

"Property" is in turn defined in I.C. § 18–2402(8) to mean "anything of value," including "labor or services."[3]

■ We will begin, therefore, by considering whether Culbreth's act of taking her dog from the shelter without authorization in order to avoid paying shelter fees could constitute a theft of the shelter's labor or services. We conclude that it could not. It cannot be said that Culbreth "took, obtained, or with-

held" the shelter's services. She did not request the shelter's services; indeed, her dog was taken to the shelter and housed there without Culbreth's knowledge or consent. A theft of services occurs when one unlawfully *acquires* the services. Such an offense may be committed under I.C. § 18–2403(2)(a) by deception, or under (2)(b) by trick, extortion, or false pretenses, or under (2)(d) by false promise as, for example, when one schemes to trick a third person into providing labor or services through a false promise of compensation.[4] No such conduct of Culbreth was alleged or proven here, however. Therefore, Culbreth's conviction cannot be sustained on the theory that the State proved a theft of labor or services.

■ We next consider whether her intent to dodge payment of the shelter's fees by taking her dog surreptitiously can be viewed as an intent to steal a thing of value. Answering this question entails, to an extent, interpretation of the theft statute to determine whether the word "steals" in I.C. § 18–2403(1) can include nonpayment of a debt. The determination of the meaning of a stat-

---

**3.** Idaho Code § 18–2402(8) states:

"Property" means anything of value. Property includes real estate, money, commercial instruments, admission or transportation tickets, written instruments representing or embodying rights concerning anything of value, labor or services, or otherwise of value to the owner; things growing on, affixed to, or found on land, or part of or affixed to any building; electricity, gas, steam, and water; birds, animals and fish, which ordinarily are kept in a state of confinement; food and drink; samples, cultures, microorganisms, specimens, records, recordings, documents, blueprints, drawings, maps, and whole or partial copies, descriptions, photographs, prototypes or models thereof, or any other articles, materials, devices, substances and whole or partial copies, descriptions, photographs, prototypes or models thereof which constitute, represent, evidence, reflect or record a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention, or improvement.

**4.** Idaho Code § 18–2403(2) states:

Theft includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subsection (1) of this section, committed in any of the following ways:
(a) By deception obtains or exerts control over property of the owner;

(b) By conduct heretofore defined or known as larceny; common law larceny by trick; embezzlement; extortion; obtaining property, money or labor under false pretenses; or receiving stolen goods;

. . . .

(d) By false promise:
1. A person obtains property by false promise when pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.
2. In any prosecution for theft based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed. Such a finding may be based only upon evidence establishing that the facts and circumstances of the case are consistent with guilty intent or belief and inconsistent with innocent intent or belief, and excluding to a moral certainty every reasonable hypothesis except that of the defendant's intention or belief that the promise would not be performed. . . .

ute and its application is a matter of law over which this Court exercises free review. *Idaho Cardiology Assoc., P.A. v. Idaho Physicians Network, Inc.,* 141 Idaho 223, 225, 108 P.3d 370, 372 (2005). In construing a statute, our objective is to ascertain and effectuate the intent of the legislature. *Adamson v. Blanchard,* 133 Idaho 602, 605, 990 P.2d 1213, 1216 (1999); *Kootenai Elec. Co-op., Inc. v. Washington Water Power Co.,* 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995); *Carpenter v. Twin Falls County,* 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984). The legislature's intent is ascertained from the statutory language, and the Court may seek edification from the statute's legislative history and historical context at enactment. The words must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole. *State v. Hart,* 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). When it is a criminal statute that is at issue, the court must construe the statute strictly and in favor of the defendant. *State v. McCoy,* 128 Idaho 362, 365, 913 P.2d 578, 581 (1996); *State v. Martinez,* 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct.App.1995). This was explained by the Idaho Supreme Court in *State v. Hahn,* 92 Idaho 265, 441 P.2d 714 (1968), as follows:

> A statute defining a crime must be sufficiently explicit so that all persons subject thereto may know what conduct on their part will subject them to its penalties. A criminal statute must give a clear and unmistakable warning as to the acts which will subject one to criminal punishment, and courts are without power to supply what the legislature has left vague. An act cannot be held as criminal under a statute unless it clearly appears from the language used that the legislature so intended.

*Id.* at 267, 441 P.2d at 716 (citations omitted).

If, as the State asserts, an intent to evade payment of a debt constitutes an intent to commit theft, then the actual nonpayment of a debt must constitute the crime of theft. Thus, the question at hand is whether the term "steals property" in I.C. § 18–2403(1) includes the intentional nonpayment of an existing debt or financial obligation.

We were presented with a somewhat analogous issue concerning interpretation of the theft statute in *State v. Henninger,* 130 Idaho 638, 945 P.2d 864 (Ct.App.1997), where an individual who purchased a vehicle in a secured credit sale and defaulted in payments, thereby entitling the seller to repossess the vehicle, was prosecuted for theft because he did not voluntarily return the vehicle to the seller. In holding that the theft statute did not criminalize the retention of collateral after default on a secured obligation, we noted that our decision was based, in part, "upon the traditional separation between criminal law and contract law." *Id.* at 642, 945 P.2d at 868. We there rejected the proposition that in adopting the theft statute, the legislature "intended to render criminal the conduct of every person who misses a payment on a secured credit purchase and does not immediately comply with a contractual obligation to relinquish possession of the collateral to the secured seller." *Id.* at 641, 945 P.2d at 867.

■ In the present case, we likewise conclude that the legislature did not intend the theft statute to criminalize the nonpayment of an existing, lawfully incurred financial obligation. The words of the statute evince a legislative intent to prohibit active steps to wrongfully acquire something of value from another, not passive nonpayment of an obligation that one already owes. It is the trickery, deception, extortion or similar mischief used to induce the victim to provide something of value to the perpetrator that the theft statute proscribes, not the mere dishonoring of an obligation that was innocently created.

Moreover, if the theft statute were interpreted to include mere nonpayment of debt, it would likely run afoul of Article I, Section 15 of the Idaho Constitution, which specifies that "[t]here shall be no imprisonment for debt in this state except in cases of fraud." The fraud exception in this constitutional provision has no application here, for Culbreth's obligation to the animal shelter was incurred unintentionally and involuntarily, not fraudulently. For the nonpayment of such an obligation the remedy lies in a civil

action for collection, not in a criminal prosecution.

For the foregoing reasons we hold that the intent which the State attributes to Culbreth and contends that it proved—an intent to evade payment of a just obligation owed to the animal shelter—however dishonorable or ignoble it might be, does not amount to an intent to commit theft. Because the State's evidence in this case did not, as a matter of law, suffice to prove that Culbreth entered the animal shelter with an intent to commit a theft, her conviction for burglary cannot stand.[5]

The judgment of conviction for burglary is reversed.

Chief Judge GUTIERREZ and Judge PERRY Concur.

---

**5.** In addition to her conviction for malicious destruction of property, Culbreth, in breaking into the shelter, likely committed the additional misdemeanor offense of unlawful entry, I.C. § 18-7034, but she was not charged with that offense.