IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 34066

| STATE OF IDAHO, | ) | 2009 Opinion No. 29 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 16, 2009 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WILLIAM LYNN BENNETT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction and unified sentence of eight years, with one and one-half years determinate, for grand theft and a concurrent sentence of eight years, with one and one-half years determinate on a persistent violator enhancement, affirmed.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

William Lynn Bennett appeals from the judgment of conviction entered upon a jury verdict finding him guilty of grand theft and his guilty plea to being a persistent violator. We affirm.

## I.

## FACTS AND PROCEDURE

In October 2004, Bennett entered a verbal agreement with John LeFave to purchase LeFave's travel trailer.[1] It was agreed that LeFave would immediately bring the trailer to

---

[1] The parties offered disparate testimony as to the agreed upon purchase price. LeFave testified that Bennett had agreed to pay him $1,500, while Bennett testified that he had only agreed to pay $850.

1

Carolyn Ellinger's (a friend of Bennett's) property where Bennett was staying and that Bennett would make payments to LeFave up to the full purchase price. LeFave testified that the parties had not agreed to a payment structure, but that he had told Bennett he would take a down payment and then they "would go from there and go to a finance company and get it straightened out." LeFave also testified that under the terms of the agreement, once Bennett finished paying for the trailer, he would receive the title.

When LeFave dropped off the trailer at Ellinger's house, he testified that he "put a chain on it" and a "tongue hitch lock system" "[t]o keep it from being moved" because Bennett did not have permission to move the trailer until it had been paid for in full. LeFave testified that he specifically told Bennett that if the trailer needed to be moved, LeFave would personally move it "so [he] would know where it was at all times."

Bennett made at least one payment toward the purchase price,[2] but then LeFave learned that the trailer had been moved without his permission. LeFave went to Ellinger's property to confirm that the trailer was missing and discovered that the lock had been removed and that part of the lock system had been left on the ground.[3]

A few months later, Bennett called LeFave to tell him that he had moved the trailer to Washington. LeFave testified that Bennett also told him to send him the title to the trailer and then Bennett would send LeFave $1,000, but that if LeFave "got the police involved" Bennett would "burn" the trailer. After contacting law enforcement, LeFave sent Bennett a certified letter to the Washington address that Bennett had provided him on the phone which advised Bennett that LeFave was going to report the trailer as stolen and that if Bennett had any questions, he should contact the Boise Police Department. The letter was eventually returned as undelivered.

---

[2] The parties agreed that one payment was made to LeFave's wife who could not recall the precise amount. She estimated that it had been between $200 and $300. Bennett testified that he had paid $150 dollars to LeFave's wife, but had made other payments to LeFave as well.

[3] Bennett testified at trial that when he started a second job, LeFave had moved the trailer for him from Ellinger's house to a new location and that he had advised LeFave that he may be moving again. LeFave denied that he had moved the trailer again after leaving it on Ellinger's property.

In an effort to locate the trailer, LeFave then drove to Washington to the address Bennett had given him. He discovered that both Bennett and the trailer were no longer at that location, and he proceeded to report the theft of his trailer to law enforcement. At the time of trial, LeFave had received neither further payment nor a return of the trailer from Bennett.

Bennett was charged with grand theft, Idaho Code §§ 18-2403(1), 18-2407(1)(b), and with being a persistent violator, I.C. § 19-2514. After a trial, a jury found Bennett guilty of grand theft, and Bennett subsequently pled guilty to the persistent violator allegation. He filed a motion for judgment of acquittal, claiming that "[t]he inculpatory evidence presented on the material element of value was so insubstantial that jurors could not help but have a reasonable doubt as to the proof of that element." The district court denied the motion, entered a judgment of conviction, and imposed a unified eight-year sentence with one and one-half years determinate for the grand theft conviction. The court also imposed a concurrent identical sentence for the persistent violator enhancement. Bennett now appeals.

## II.

## ANALYSIS

### A.    Sufficiency of the Evidence

Bennett first argues that the evidence presented at trial was insufficient to support the jury's verdict finding him guilty of grand theft. Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. Substantial evidence does not mean that the evidence need be uncontradicted. In *State v. Herrera, et. al.* ___ Idaho ___, ___, P.3d ___, ___ (Ct. App. 2009), this Court noted:

All that is required is that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds must conclude, only that they could conclude.

*Id.* at ___, ___ P.3d at ___ (citation omitted).

Idaho Code Section 18-2403(1), under which Bennett was charged, states that "[a] person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." An "owner" is defined as "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." I.C. § 18-2402(6). The intent to "deprive" another of property means the intent "[t]o withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him . . ." or "[t]o dispose of the property in such a manner or under such circumstances as to render it unlikely that an owner will recover such property." I.C. § 18-2402(3).

On appeal, Bennett argues that the state failed to present sufficient evidence on three elements of the theft charge:

(1) that Mr. Bennett wrongfully took the property, because the property was in Mr. Bennett's possession so it could not be "wrongfully" taken by him; (2) that the property was taken from an owner, because Mr. Bennett had contracted with Mr. LeFave for the trailer and was ostensibly the owner of the trailer; and (3) that Mr. Bennett took the property with the intent to deprive the owner of the property or to appropriate the property, because Mr. Bennett did not have the requisite intent since he possessed and believed he owned or had an ownership interest in the trailer.

We will address each of the contested elements in turn.

Bennett's first argument, that the state failed to establish that he "wrongfully" took the property, is based on the premise that he could not have wrongfully taken the property because the property was lawfully in his possession when he transported the trailer to Washington. To support this argument, he relies on both the statutory definition of "obtain" and this Court's opinion in *State v. Henninger*, 130 Idaho 638, 945 P.2d 864 (Ct. App. 1997).

Idaho Code Section 18-2402(4) defines "obtain" as "to bring about a transfer of interest or possession, whether to the offender or to another." On this basis, Bennett argues that he could not be found to have wrongfully obtained the trailer since LeFave had voluntarily given him possession. However, it was reasonable for the jury to conclude that Bennett was not granted

4

full possession but only a right to occupy the trailer on Ellinger's property--as supported by LeFave's testimony that he had locked the hitch and explicitly told Bennett that he was not to move the trailer himself. Thus, Bennett's act of removing the trailer from Ellinger's property without LeFave's permission and without first paying for it as the parties had agreed constituted a wrongful taking criminalized in the theft statute, as it far exceeded the limited control that LeFave had granted Bennett over the property.

Bennett's reliance on *Henninger* for the proposition that one cannot wrongfully take property that is lawfully in one's possession is likewise unavailing since that case is readily distinguishable from the circumstances here. In *Henninger*, 130 Idaho at 640-41, 945 P.2d at 866-67, the defendant was charged with grand theft by unauthorized control in contravention of I.C. § 18-2403(3), which occurs when a person "knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the intent of depriving the owner thereof." The charge arose after Henninger signed an installment sales contract with a car dealership to purchase a vehicle and a promissory note for the down payment, but failed to make payment or return the vehicle to the dealership. The dealership not only had given Henninger full possession, it had transferred title to him by delivering to him all necessary title documents. Thus, when Henninger drove off the lot with the vehicle, he was fully authorized and entitled to do so. On appeal, this Court concluded there was insufficient evidence to establish that Henninger's possession of the vehicle constituted "unauthorized control" under the statute. Central to our decision was the determination that the legislature had not intended the theft by unauthorized control provisions of the statute to apply where a purchaser in a secured credit sale has defaulted on payments and the creditor has thereby become entitled to retake possession of the goods. *Id*. at 641, 945 P.2d at 867. Although we acknowledged that it legitimately could be argued, based on the statutory definition of "owner," that a party who holds only a security interest becomes the "owner" of the goods upon the debtor's default, we concluded it was unlikely that in adopting the statutory provisions implicated, the Idaho legislature intended to criminalize the conduct of every person who misses a payment on a secured credit purchase and does not immediately comply with a contractual obligation to relinquish possession of the collateral to the secured seller. *Id*.

In *Henninger*, this Court also considered the tradition against enforcing contractual obligations through the criminal law. Article 1, § 15 of the Idaho Constitution provides that

5

"[t]here shall be no imprisonment for debt in this state except in cases of fraud." This provision is intended to prohibit imprisonment over disputes which are contractual in nature, *State v. Owen*, 129 Idaho 920, 928, 935 P.2d 183, 191 (Ct. App. 1997), and operates to avoid the improbability of preventing honest insolvency by threat of prosecution, the danger of discouraging healthy commercial risk-taking or of obtaining unjust convictions by hindsight, the futility of imprisoning a debtor unable to pay, and the concept that the seller or lender must select and accept his risks. *Henninger*, 130 Idaho at 642, 945 P.2d at 868. In *Owen*, 129 Idaho at 929, 935 P.2d at 192, we interpreted the constitutional provision, stating that:

> According to our Supreme Court in *State v. Cochrane*, 51 Idaho 521, 6 P.2d 489 (1931), Art. 1 § 15 of the Idaho Constitution was "directed against imprisonment for debt, in civil actions, at the instance of the creditor with a view to coercing the payment of his debt, and had no reference to such actions as might be brought by the state through its officers in the interest of good morals and honest dealing." 51 Idaho at 527, 6 P.2d at 491. The Court further held that statutes protecting an individual from imprisonment for debt were "not intended to take away the right to enforce criminal statutes and punish wrongful embezzlements or conversions of money." *Id.*

In this context, we ultimately concluded in *Henninger* that without a more explicit expression of intent by the legislature to abandon the customary separation of criminal law from civil contract enforcement, we could not conclude that the legislature intended unauthorized control under the theft statute to encompass possession by a debtor who, by defaulting on one payment, has become contractually obligated to return the collateral to the creditor, or that the legislature intended the theft statute to be a mechanism that would aid the repossession efforts of secured creditors. *Henninger,* at 642, 945 P.3d at 868 (quoting *State v. Jesser*, 95 Idaho 43, 50, 501 P.2d 727, 734 (1972)).

Bennett insists that *Henninger* controls the situation presented here in regard to its discussion of the reasons behind the distinction between civil and criminal liability in a contract case. According to his interpretation, a holding that he wrongfully took the trailer would amount to a holding that the owner of any vehicle who had not completed all payments to the creditor could be guilty of theft if they quit making payments while in lawful possession of the vehicle--a proposition that is counter to our holding in that case. *See Henninger*, 130 Idaho at 641-42, 945 P.2d at 867-68.

However, even taking into account the broader principles of criminal liability in contract cases discussed in *Henninger*, they do not support Bennett's argument. In *Henninger*, 130 Idaho

at 641, 945 P.2d at 867, the defendant's alleged criminal act was not taking possession of the vehicle, but solely his failure to take the affirmative act of returning the vehicle to the dealership when he defaulted on the payment. We specifically noted that:

> [t]he dealership . . . . relinquished to Henninger all the badges of ownership and did everything that it could do to transfer title to him. Consequently, when Henninger drove away in the pickup, it was not the property of another "owner" and his control of the vehicle was not "unauthorized." Indeed, under the parties' contract, the dealership had no further right to possession except to the extent that it would be entitled to repossess the vehicle upon default by terms of the security agreement and Idaho law governing the rights of secured creditors.

In this case, by contrast, there was sufficient evidence that LeFave had not relinquished to Bennett "all the badges of ownership," but rather had explicitly retained both the title and his right to possession of the trailer in that Bennett was not to move it without LeFave's assistance. Thus, Bennett was not prosecuted simply for his failure to complete payments to LeFave, but for his action of removing the trailer from Ellinger's property in contravention of LeFave's explicit instructions. In other words, Henninger had been given title (subject to the dealership's security interest), full possession of the vehicle, and inherent permission to move it freely, so his doing so was not a criminal act. In this case, however, Bennett had been given only limited use in that he was allowed to live in the trailer on Ellinger's property, but was not allowed to move the trailer as evidenced by LeFave's precaution in locking the trailer hitch and telling Bennett that he was not to move the trailer without LeFave's knowledge. Thus, Bennett's action in moving the trailer could be criminal, while Henninger's possession of the vehicle could not. As a result of this distinction, the jury's verdict in this case does not, as Bennett alleges, run afoul of the Idaho constitutional provision prohibiting criminal enforcement of contractual obligations.

Bennett also argues there was insufficient evidence that LeFave was the "owner" of the trailer--i.e., that LeFave had a right to possession of the property that was superior to Bennett's. Specifically, Bennett asserts that under Uniform Commercial Code (UCC), "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." I.C. § 28-2-401(2). Thus, he contends, when LeFave delivered the trailer to him, the "title had passed" and that by accepting partial payment for the trailer and moving it to the

7

property where Bennett was staying, LeFave was "transferring" ownership of the trailer to Bennett.

To support his argument that the UCC definition applies in this case, Bennett relies on the fact that in *Jesser*, 95 Idaho 43, 501 P.2d 727, the court analyzed when title to the goods purchased had passed in reference to the UCC provision in the context of determining whether there was sufficient evidence to convict the defendant of larceny. However, as the state points out, the court's reference to the UCC was contextual based on the circumstances of that case and provides no authority for Bennett's proposition that UCC provisions apply in a criminal context to determine an "owner" where the theft statute itself already defines an "owner" as "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." I.C. § 18-2402(6). Further, under section 28-2-401(2), title passes upon the seller's completion of performance only if the parties have not "otherwise explicitly agreed." Here, LeFave testified to an explicit agreement that Bennett would not receive title to the trailer until he had paid the full purchase price.[4] Given the definition of "owner" set by the legislature in the theft statute, we conclude there was sufficient evidence for a reasonable jury to find that LeFave possessed a superior right to possession given that he retained both title and sole control over the location of the trailer, and therefore by moving the trailer to Washington, Bennett had taken property from the "owner."

Finally, Bennett contends that the state failed to show that he took the trailer with the intent to "permanently deprive" LeFave of his interest in the property. His argument is based on the premise that he had lawful possession of the trailer and was the owner of it and therefore, he could not have possessed the intent to permanently deprive LeFave of something LeFave did not have at the time of the alleged theft (namely "ownership" of the trailer).

Bennett's argument on this point is unavailing because, as we discussed above, Bennett was never the "owner" of the trailer. Notably, Bennett does not argue that when he took the trailer, he did not intend it to be a permanent deprivation--rather he focuses solely on his assertion that even if he did intend to permanently keep the trailer, his act was not criminal because he was the actual owner of the trailer. Thus, having discounted his assertion that LeFave

---

[4]    Given our conclusion that Bennett's argument based on I.C. § 28-22-401 is unavailing, we need not address the interplay between the statute and I.C. § 49-503, which governs the acquisition of title to vehicles.

no longer had ownership interest for Bennett to "permanently deprive," we conclude there was sufficient evidence whereby a reasonable jury could find that the state had proven this element of the theft charge.

**B.      Sentence Review**

Bennett claims that the sentence imposed was illegal because the persistent violator enhancement, to which he pled guilty, could only be utilized to enhance his sentence on the grand theft conviction as opposed to providing the basis for a separate, concurrent sentence as occurred here.

We decline to address this issue because Bennett did not raise it below. A claim of illegal sentence is not an issue that may be presented for the first time on appeal. *State v. Hoffman*, 137 Idaho 897, 903, 55 P.3d 890, 896 (Ct. App. 2002). If Bennett wishes to bring this question to the district court, he may yet do so under Idaho Criminal Rule 35. *See State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007) (noting that Rule 35 allows a district court to correct an illegal sentence at any time).

### III.
### CONCLUSION

We conclude there was sufficient evidence presented whereby a reasonable jury could find that each of the elements of the theft charge was proven beyond a reasonable doubt. Also, we decline to address Bennett's argument that his sentence was illegal, because he did not raise the issue below. The judgment of conviction and sentences are affirmed.

Chief Judge LANSING and Judge PERRY **CONCUR**.

9